

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0769-12

---

**BEN CHAMBLESS, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRD COURT OF APPEALS
### TRAVIS COUNTY

---

KEASLER, J., delivered the opinion of the Court, in which KELLER, P.J., MEYERS, PRICE, JOHNSON, HERVEY, COCHRAN, and ALCALA, JJ., joined. WOMACK, J., not participating.

### O P I N I O N

Ben Chambless appeals from the court of appeals' judgment affirming his jury-assessed punishment of eight years' confinement for committing criminally negligent homicide. We affirm the court of appeals' judgment that the jury instructions properly defined the punishment range of a third-degree felony because there is no conflict between the relevant statutes, the state-jail felony deadly-weapon punishment enhancement is

applicable to criminally negligent homicide, and its application is not contrary to legislative intent.

## Trial

The indictment charging Chambless with second-degree manslaughter alleged that he "recklessly cause[d] the death of . . . Brian Berg, by shooting him with a firearm which [Chambless] discharged multiple times in the dark without first determining whether someone was in the line of fire." The indictment also contained a separate deadly weapon enhancement paragraph.

On the night of the shooting, Chambless was awakened by his wife, who heard a noise outside of their bedroom window. Chambless believed that the noise was coming from the neighbor's dog, Happy, who had a habit of getting loose at night and causing mischief around Chambless's house. Chambless retrieved his .22 caliber rifle with the intent of firing a few rounds to scare off Happy. He stepped out of his house onto the dark porch and fired several rounds towards the ground. Brian Berg was struck in the head, chest, shoulder, elbow, and leg. Chambless heard a "gurgling noise."

Chambless went back into the house, put the rifle away, got dressed, and went outside again. When he turned his porch light on, he discovered Berg lying face down in the yard. Chambless's wife immediately called 911. Berg was pronounced dead at the scene. Chambless told investigators that he did not see Berg before firing the rifle.

In addition to the second-degree felony manslaughter[1] charge alleged in the indictment, the trial judge's jury instructions charged the jury on the lesser-included state-jail felony offense of criminally negligent homicide:[2]

> [If you believe beyond a reasonable doubt that Chambless] did then and there with criminal negligence cause the death of [Berg] by shooting him with a firearm, and the defendant discharged multiple times in the dark without first determining whether someone was in the line of fire, then you will find the defendant guilty of Criminally Negligent Homicide and so say by your verdict. But if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of Criminally Negligent Homicide and so say by your verdict not guilty. . . .

> And it is further presented in and to said Court that a deadly weapon, to wit: a firearm, was used of exhibited during the commission of the aforesaid offense, and that [Chambless] used or exhibited the said deadly weapon. . . .

The jury acquitted Chambless of manslaughter, but convicted him of criminally negligent homicide "as alleged in the indictment." The punishment-phase jury instructions did not include the punishment range found in Texas Penal Code § 12.35(a)—a term of 180 days to two years and a fine not to exceed $10,000.[3] Pursuant to § 12.35(c)(1), the instructions informed the jury that the punishment range for criminally negligent homicide with a deadly weapon was a term of confinement between two and ten years, and a fine not to exceed

---

[1] TEX. PENAL CODE § 19.04(b).

[2] *Id.* § 19.05(b).

[3] *Id.* § 12.35(a)-(b).

$10,000.[4]  The jury assessed an eight-year term of confinement.

## Court of Appeals

In the court of appeals, Chambless claimed that the trial judge's jury instructions on punishment erroneously stated the applicable punishment range was that of a third-degree felony instead of the non-enhanced state-jail felony punishment range.  The root of Chambless's argument is that, because the term "deadly weapon" is so broad and includes anything capable of causing death, every criminally negligent homicide will always be punished as a third-degree felony.  Chambless argued that, under the rules of statutory construction, criminally negligent homicide must be construed as an exception to the deadly-weapon enhancement.  Claiming a conflict exists between § 19.05(b) and § 12.35(c)(1), Chambless maintained that the two sections cannot be reconciled and therefore, under the *in pari materia* doctrine, § 19.05(b) should control because it is the more detailed and specific provision.  The court of appeals disagreed, finding that the two statutes did not conflict, § 12.35(c)(1) properly applied, and not all criminally negligent homicides implicate the deadly-weapon enhancement provision.[5]

We granted Chambless's two intertwined grounds in his petition for discretionary

---

[4]  *See id.* § 12.35(c)(1) (providing, in relevant part, that if the defendant used or exhibited a deadly weapon as defined by § 1.07 during the offense's commission, a state-jail felony shall be punished as a third-degree felony), § 12.34(a)-(b) (providing a punishment range of a term of confinement of "not more than 10 years or less than 2 years," and a fine not to exceed $10,000).

[5]  *Chambless v. State*, 368 S.W.3d 785, 790-92 (Tex. App.—Austin).

review: (1) whether the court of appeals erred in holding that the deadly-weapon enhancement found in Texas Penal Code § 12.35(c)(1) applied to the offense of criminally negligent homicide, and (2) whether the court of appeals erred in holding that not all criminally negligent homicides include the use of a deadly weapon. In his petition for discretionary review and brief to this Court, Chambless advances the same substantive arguments asserted in the court below.

## Analysis

We agree with the court of appeals that § 19.05(b) and § 12.35(c)(1) do not conflict. Nor are the statutes *in pari materia* because they do not "deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons and things."[6] Because the *in pari materia* doctrine is a rule of statutory construction seeking to carry out the Legislature's intent, we give the statutes' purpose greater significance among the factors in considering whether two statutes are *in pari materia.*[7]

The statutes' plain language and placement within the Penal Code is evidence of their distinct purposes and subjects: one defines the offense, the other defines the offense's punishment range. Section 19.05—found in Chapter 19, titled "Criminal Homicide"—defines criminally negligent homicide as "caus[ing] the death of an individual

---

[6] *See Jones v. State*, 396 S.W.3d 558, 561 (Tex. Crim. App. 2013).

[7] *Id.*

by criminal negligence."[8]  Although classifying criminally negligent homicide as a state-jail felony, it makes no mention of an applicable punishment range.[9]  Section 12.35—in Chapter 12, titled "Punishments"—defines how state-jail felonies shall be punished.  Section 12.35(a) provides that state-jail felonies carry a punishment range of confinement for a term of 180 days to two years and a fine not to exceed $10,000.  However, in instances where (1) a deadly weapon was used or exhibited during the commission of the state-jail felony offense or during flight following the offense, and (2) the defendant used or exhibited the deadly weapon or was a party to the state-jail felony offense and knew that a deadly weapon would be used or exhibited, § 12.35(c)(1) states that the particular state-jail felony for which the defendant was convicted shall be punished by confinement for two to ten years and a fine not to exceed $10,000.[10]  Section 12.35(c)'s phrase "an individual adjudged guilty of a state jail felony shall be punished for a third degree felony" means that, while the conviction is for a state-jail felony, it is punishable as a third-degree felony.  The elevated punishment does not change the criminally negligent homicide's classification as a state-jail felony to a third-degree felony.[11]  Therefore, because the statutes do not have the same purpose or deal with the same subjects, they are not *in pari materia*.  Additionally, the statutes' plain language

---

[8]  TEX. PENAL CODE § 19.05(a).

[9]  *Id.* § 19.05(b).

[10]  *Id.* §§ 12.35(c)(1), 12.34.

[11]  *Goodrich v. State*, 156 S.W.3d 141, 148-49 (Tex. App.—Dallas 2005, pet. ref'd.).

does not reveal any conflict between the two statutes.

Chambless argues that, because a homicide by its nature involves a death, a guilty verdict of criminally negligent homicide naturally implicates the use of a deadly weapon. And as a result, every criminally negligent homicide is automatically punishable as a third-degree felony despite the Legislature's intent that it be punished as a state-jail felony. Chambless's argument is unpersuasive. Chambless's argument assumes that when the Legislature defined criminally negligent homicide as a state-jail felony, it intended to punish every incident of this homicide variant by confinement of 180 days to two years and a fine not to exceed $10,000. But the mere existence of § 12.35(c)(1) is evidence to the contrary. Further, to validate Chambless's assumption would require reading § 12.35(c)(1) out of the statute and hold that its enactment was a useless act as it relates to criminally negligent homicide—a finding we are not inclined to make.[12]

Chambless's premise that every criminally negligent homicide necessarily implicates the use of a deadly weapon is also flawed. In support, Chambless relies on language found in our *Crumpton v. State* opinion.[13] There, we stated "a verdict of homicide necessarily is a finding that a deadly weapon was used. . . . Having found that the defendant was guilty of homicide, the jury necessarily found that the defendant used something that in the manner of its use was capable of causing—and did cause—death." The issue in *Crumpton* was the

---

[12] *See Crabtree v. State*, 389 S.W.3d 820, 825 (Tex. Crim. App. 2012).

[13] *Crumpton v. State*, 301 S.W.3d 663, 664 (Tex. Crim. App. 2010).

propriety of the deadly-weapon finding in the judgment upon the jury finding Crumpton guilty of criminally negligent homicide "as included in the indictment," which specifically alleged the use of a deadly weapon.[14] We were not confronted with the arguments Chambless presents in this case, nor did the *Crumpton* case present a situation in which an indictment charged a defendant with criminally negligent homicide without specifically including a deadly-weapon allegation within the elements describing the manner and means of committing the homicide. As a result, the language on which Chambless relies was simply an extension of the Court's reasoning: the deadly-weapon finding was proper because (1) Crumpton's indictment specifically charged that he used a deadly weapon (a motor vehicle), and (2) the jury's verdict, which referred to the indictment, necessarily included a finding that he used a deadly weapon.

As the present case demonstrates, a person may use or exhibit a "deadly weapon"[15] in the course of committing criminally negligent homicide, but it is not necessarily so. The three-judge concurrence joining the *Crumpton* majority recognized the distinction between allegations of causing death by an act and by causing death from an omission.[16] Chambless's

---

[14] *Id.*

[15] TEX. PENAL CODE § 1.07(a)(17) ("'Deadly weapon' means: (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.").

[16] *Crumpton*, 301 S.W.3d at 666 (Hervey, J., concurring, in which Keasler and Cochran, JJ., joined).

argument overlooks the possibility of committing criminally negligent homicide by omission, in which a deadly weapon may not be used at all.[17]   If found guilty of criminally negligent homicide in such a scenario, a defendant may face the non-enhanced state-jail felony punishment range found in § 12.35(a).  Even if we accepted Chambless's premise as valid—that every criminally negligent homicide necessarily implicates the use of a deadly weapon—it would be merely academic in this case because Chambless's use of a firearm was uncontested and clearly satisfied § 12.35(c)(1).

We further understand Chambless's legislative-intent argument to maintain that § 12.35(c)(1) should not apply to criminally negligent homicide because doing so is contrary to the Legislature's intended scheme in enacting § 12.35(c)(1).   Although candidly acknowledging his inability to cite any authority supporting his interpretation of the Legislature's intent in enacting the provisions at issue, Chambless analogizes § 12.35(c)(1) to Texas Code of Criminal Procedure Article 42.12, § 3g, which limits court-ordered community supervision in cases in which there is an affirmative finding of a deadly weapon. Chambless refers us to Judge Maloney's concurrence in *Tyra v. State*, in which Judge Maloney cited legislative materials relevant to the passage of Texas Code of Criminal Procedure Article 42.12, § 3g, revealing the Article's overall purpose was to deter the intentional use of firearms during the commission of crime and to send a message to

---

[17]   *See Tello v. State*, 180 S.W.3d 150 (Tex. Crim. App. 2005) (holding that the failure to properly attach a trailer to a vehicle or to properly load that vehicle will sustain a conviction for criminally negligent homicide).

criminals to "leave the gun at home."[18] Applying the deadly-weapon enhancement to criminally negligent homicides is incongruous, Chambless maintains, because the requisite mental state of this type of homicide is criminal negligence, which by its definition, means that the defendant did not contemplate committing a crime nor perceived a substantial and unjustified risk of the circumstances. Chambless would have us ignore § 12.35(c)(1) in criminally negligent homicides; it is a request we may not indulge.[19] The contested statutes are not ambiguous nor contradictory, and applying § 12.35(c)(1) to criminally negligent homicides does not lead to absurd results that the Legislature could not have possibly intended.[20] The best evidence of the Legislature's intent is the plain language of the law it passed.[21] And we need to look no further in rejecting Chambless's contention.

We affirm the court of appeals' judgment.


DELIVERED: October 23, 2013

PUBLISH

---

[18] *Tyra v. State*, 897 S.W.2d 796, 802-803 (Tex. Crim. App. 1995) (Maloney, J., concurring).

[19] *See Crabtree*, 389 S.W.3d at 825.

[20] *See Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

[21] *Id*. at 785-86.