PD-0228-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 10/20/2015 5:07:30 PM
Accepted 10/21/2015 7:54:33 AM
ABEL ACOSTA
CLERK

# CAUSE NO. PD-0228-14

## IN THE COURT OF CRIMINAL APPEALS
## OF THE STATE OF TEXAS

---

### THE STATE OF TEXAS,

Appellant

v.

### TERENCE JOHNSON,

Appellee

---

# STATE'S MOTION FOR REHEARING

---

On appeal from the Twelfth Court of Appeals,
Cause No. 12-12-00425-CR

---

DAPHNE L. SESSION
Houston County Attorney
Houston County, Texas

AMBER N. BEWLEY
Assistant County Attorney
401 E. Houston Ave., 2nd Floor
Crockett, Texas  75835
*Phone:* (936) 544-3255 ext. 270
*Fax:* (936) 544-9811
*Email:* abewley@co.houston.tx.us
SBN: 24069381

Cause No. PD-0228-14

IN THE COURT OF CRIMINAL APPEALS

OF THE STATE OF TEXAS

THE STATE OF TEXAS, ............................................................................
    Appellant

v.

TERENCE JOHNSON,................................................................................
    Appellee

\* \* \* \* \*

# STATE'S MOTION FOR REHEARING

\* \* \* \* \*

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW, the State of Texas by and through her Houston County Attorney, DAPHNE SESSION, and files this the State's Motion for Rehearing in the above numbered and styled appeal and for cause would show:

### **Point on Rehearing**

The majority opinion mistakenly places a burden on the State to prove the absence of a chilling effect and artificially limits the legitimate scope of the statute by ignoring its plain language.

1

# **Argument and Authorities**

This Court struck Texas Penal Code § 42.11, "Destruction of Flag," as being facially unconstitutional for overbreadth.[1]  In short, the Court found that the statute "prohibits a substantial amount of activity that is protected by the First Amendment, judged in relation to its legitimate sweep."[2]  Although the Court explains in detail the applicable framework for review,[3] its application turns that standard on its head by overstating the realistic danger that speakers are being chilled and ignoring the plain language of the statute when determining its plainly legitimate sweep.

## There is no realistic danger based in actual fact of a substantial number of unconstitutional applications.

In order to apply the "strong medicine" of a facial challenge based on overbreadth, there must first be "a *realistic* danger that the statute itself will *significantly* compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds."[4]  It must be

---

[1]    *State v. Johnson*, PD-0228-14, 2015 Tex. Crim. App. LEXIS 1057 (Tex. Crim. App. Oct. 7, 2015).

[2]    Slip op. at 35.

[3]    Slip op. at 5-8.

[4]    *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 801 (1984) (emphasis added).

shown "from *actual fact* that a substantial number of instances exist in which the Law cannot be applied constitutionally."[5] Most importantly, the overbreadth claimant bears this burden.[6] As argued in the State's brief, appellee failed to satisfy his burden because he never assumed it—appellee claimed only that the statute was unconstitutional in all applications because any damage done to a flag is expressive.[7] Even if courts of appeals were permitted to satisfy this burden for appellee, this Court failed to do so.

There is no dispute that the statute prohibits some conduct that is protected by the First Amendment. Flag-burning is not a "fanciful hypothetical"[8]; it was a phenomenon that actually used to occur. But identifying a specific, concrete unconstitutional application is not enough. The Supreme Court understood that "there are substantial social costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially to constitutionally unprotected conduct."[9] It accepted that some chilling effect could be

---

[5]     *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988) (emphasis added).

[6]     *Virginia v. Hicks*, 539 U.S. 113, 122 (2003).

[7]     State's Br. at 17.

[8]     Slip op. at 7 (quoting *United States v. Stevens*, 559 U.S. 460, 485 (2010)).

[9]     *Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (emphasis in original).

3

tolerated to serve the legitimate ends of the statute because "there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of [a] law. . . ."[10]

In this case, there is no evidence of a realistic danger, based in actual fact, that anyone has been dissuaded from exercising their First Amendment right to expressively damage a flag in the recent past. None. The Court takes issue with the State's explanations for why this might be, but its response shows two mistakes. First, the State did not have to prove that there is no chilling effect. Rather, appellee (or this Court) had to show that there is. That is a difficult burden, but one built into this body of law to ensure that the "strong medicine" of overbreadth is used "sparingly and only as a last resort."[11] Forcing the State to assume a burden it does not have to prove a negative breaks with the basic framework set out by the Supreme Court.

Second, if one were to assume appellee's burden, increased awareness by both the public and the State of what is and is not protected speech is a "valid factor" to be considered.[12] The Court's charge of bootstrapping and *noblesse oblige*[13] is a

---

[10] *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).

[11] *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).

[12] Slip op. at 31.

[13] Slip op. at 31-32.

4

strawman/circular argument because it assumes recognition of a substantial chilling effect and then dismisses any attempt to ignore it. But the State is not attempting to excuse a substantial amount of chilled expression; it is explaining that it does not exist. By definition, if an actor's actual fear of prosecution is diminished to the point that it does not affect their speech, it does not matter that there is some potential for abuse or "threat of 'irresponsible' use."[14] Increased awareness of the law with regard to flags and confidence, justified or otherwise, that it will not result in prosecution are necessarily relevant to the existence of a chilling effect.

The statute's "plainly legitimate sweep" is based on the plain language of the statute.

The larger problem with the Court's analysis is what the prohibited expressive conduct was measured against. As the Supreme Court has repeatedly held, "facial invalidation is inappropriate if the 'remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct . . . .'"[15] This is why, as the Court's opinion recognized, an overbreadth challenge to a law that is not specifically addressed to conduct necessarily associated with speech will "rarely, if ever" be successful.[16] But this depends on accurately assessing the "plainly legitimate

---

[14] Slip o. at 32.

[15] *Parker v. Levy*, 417 U.S. 733, 760 (1974) (quoting *CSC v. Letter Carriers*, 413 U.S. 548, 580-581 (1973)).

[16] Slip op. at 7 (quoting *Virginia v. Hicks*, 539 U.S. 113, 124 (2003)).

5

sweep" of the statute.  The Court did not do this.

The Court says "the State does not attempt to describe the lawful applications to which the statute theoretically applies."[17]  Again, it was not the State's burden to prove the legitimate breadth of the statute.  However, the State argued in its brief that the statute was "global" in nature, agreed with the court of appeals that "the statute prohibits all conduct that threatens the physical integrity of the flag[,]" and concluded that "the universe of unprotected conduct" is "literally any harm or defacement intentionally or knowingly done to a flag or its equivalent."[18]  While the State could have posited specific examples that fall within the scope of the statute, the argument that it literally covers everything should have sufficed.  As Judge Alcala pointed out, "this statute is so broad that [she] suspect[s] that the majority of homeowners in Texas have violated it on numerous occasions and that they could be subject to prosecution by a government official acting under his lawful authority."[19]  Regardless of the wisdom or desirability of such a statute, its scope with regard to flags is "breathtaking,"

---

[17]  Slip op. at 24.

[18]  State's Br. at 15 (citation omitted), 23.

[19]  Alcala, J., Concurring at 3.  Judge Alcala had no apparent problem applying the statute to conclude that, "if someone buys a dollar-store flag similar to the ones that line many sidewalks of numerous homes in honor of our country during national holidays, with a staff that is a small stick ten inches high, flying a flag that is six inches in width, the person commits a Class A Misdemeanor under this statute by placing that item in the trash, even if the disposal is merely because the item is dirty from mud."  Concurring at 3.

"extremely broad," or whatever other adjectives this Court has used to describe the sweeps of expansive statutes.[20]

Given the dearth of expressive destruction of the flag and the universal applicability of the statute, this Court should not have been able to conclude that "expressive applications predominate."[21] It accomplished this by making artificially restricting the statute's legitimate sweep in two ways.

First, the Court dismissed any plainly prohibited conduct against one's own flag that is not expressive conduct. From the outset, this Court took the view that the nature of the statute's lawful application, as envisioned by the Court, "suggests that prosecutions for them will be uncommon, which in turn suggests that the legitimate reach of the statute is narrow."[22] There is no basis for defining the legitimate reach of a statute by the likelihood of prosecution. The requirement of a "substantial number" of "realistic" applications of the law based in "actual fact" does not apply to the State. "Legitimate," as used in overbreadth analysis, deals exclusively with ability of the legislature to prohibit the conduct without offending the Constitution. It is irrelevant that "it will likely be only by unusual happenstance that a prosecuting authority will be

---

[20]     *See Ex parte Thompson*, 442 S.W.3d 325, 350 (Tex. Crim. App. 2014) (describing the scope of the improper photography statute).

[21]     Slip op. at 24.

[22]     Slip op. at 24.

alerted to the situation,"[23] or that "prosecutions involving even arguably non-expressive conduct appear from the cases [from other jurisdictions] to be uncommon as a historical matter."[24] In fact, whether the statute is ever used is beside the point. One could not argue that the unlikelihood of discovering child abuse or a victim's body makes the prohibition on sexual assault of a child or murder illegitimate. The same reasoning applies when determining the plainly legitimate sweep of a statute for overbreadth purposes.

Second, the Court ignores any conduct committed against someone else's flag. While a footnote explains that "a person who damages someone else's flag without consent could validly be punished under a general criminal mischief statute,"[25] the portion of the opinion that is not *dicta* discounts any argument that the statute "essentially penalizes criminal mischief in relation to the flag."[26] The Court goes so far as to say, "The criminal-mischief aspect of an actor's conduct is a red herring in a constitutional analysis of the flag-destruction statute . . . ."[27] But it is the Court's

---

[23]     Slip op. at 25.

[24]     Slip op. at 30.

[25]     Slip op. at 26 n.104.

[26]     Slip op. at 26. The opinion ascribes this "criminal mischief" argument to the State, but the State's brief refers to criminal mischief only as it relates to appellant's acts and in the context of the lower court's analysis. State's Br. at 5, 12, 13.

[27]     Slip op. at 28.

8

reasoning that serves to distract from the central issue. The issue is not whether 1) the statute at issue requires a showing that TEX. PENAL CODE § 28.03 was violated, 2) an actor could be prosecuted for both, or 3) a violation of the statute could amount to criminal mischief at all.[28] Any comparison to the offense of criminal mischief serves only to illustrate that any damage done to someone else's flag is a simple property crime that poses no First Amendment issue.

Conclusion

Recent history has shown that this protected conduct is, in actual fact, insignificant, not only in an absolute sense, but in relation to the nearly all-encompassing legitimate sweep of the statute. Viewed properly, the statute legitimately prohibits every destructive act directed at another's flag and every non-expressive destructive act an owner can conceivably do to his own flag.[29] In contrast, it illegitimately prohibits the owners of flags from damaging them to communicate some message to onlookers. None of the arguments advanced by appellee or the Court change this. It does not matter that the statute might rarely, if ever, see use. Nor does it matter that the statute might, should the Court's multiple punishments conjecture

---

[28]    Slip op. at 27-29.

[29]    The only exception is for the proper disposal of damaged flags. *See* TEX. PENAL CODE § 42.11(c).

9

prove correct, "enable[] the State to separately penalize the actor's expression."[30] The only purpose of these arguments is to imply some sinister, "true" intent of the legislature, but whatever ill intent it had does not affect the plain text of the statute.[31]

The Supreme Court observed that overbreadth challenges to laws which broadly prohibit conduct not necessarily associated with speech (such as picketing or demonstrating) will "rarely, if ever" be successful because the amount of protected conducted will almost always be insubstantial, either alone or compared to the sweep of the statute. That conclusion should have been easily arrived at in this case. Although damaging a flag to inartfully express some idea is not a "fanciful hypothetical," the danger that someone has refrained from doing so becomes less and less realistic as time passes and the shock value continues to dissipate. And whatever risk exists pales in comparison to the universe of actionable conduct by people like appellant or flag owners who, without thinking, have violated the statute countless times.

---

[30] Slip op. at 28. This line of thought appears in *Ex parte Lo*, as well, as part of its co-mingling of overbreadth with strict scrutiny analysis. 424 S.W.3d 10, 20 (Tex. Crim. App. 2013) (orig. op.) ("In sum, everything that Section 33.021(b) prohibits and punishes is speech and is either already prohibited by other statutes (such as obscenity, distributing harmful material to minors, solicitation of a minor, or child pornography) or is constitutionally protected.").

[31] *See Chambless v. State*, 411 S.W.3d 498, 503-04 (Tex. Crim. App. 2013) ("The best evidence of the Legislature's intent is the plain language of the law it passed.") (citing *Boykin v. State*, 818 S.W.2d 782, 785-86 (Tex. Crim. App. 1991)).

It is only by overestimating the public desire to destroy the flag for expression and dramatically redefining how the plainly legitimate sweep of the statute is calculated that this Court can say that the statute, "by its text and in actual fact, prohibits a substantial amount of activity that is protected by the First Amendment, judged in relation to its legitimate sweep."[32] If this is now the approach in Texas, the Legislature's enactments will rarely, if ever, be upheld in the face of an overbreadth challenge.

## Prayer

WHEREFORE, PREMISES CONSIDERED, the State prays that the Court grant the State's Motion for Rehearing.

Respectfully Submitted,

**DAPHNE L. SESSION**
Houston County Attorney
State Bar No. 24012401

By: /s/ Amber N. Bewley
Amber N. Bewley
Assistant County Attorney
401 E. Houston Ave., 2nd Floor
Crockett, Texas 75835
*Phone:* (936) 544-3255 ext. 270
*Fax:* (936) 544-9811
*Email:* abewley@co.houston.tx.us
SBN: 24069381

---

[32] Slip op. at 35.

11

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to TEX. R. APP. P. 9.4, I hereby certify that this motion contains 2,356 words, exclusive of the items excepted by TEX. R. APP. P. 9.4(i)(1). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

**DAPHNE L. SESSION**
Houston County Attorney


By: /s/ Amber N. Bewley
Amber N. Bewley
Assistant County Attorney

12

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the State's Motion for Rehearing has been served on October 20, 2015, electronically through the electronic filing manager, if on file with the electronic filing manager, and by electronic email attachment delivery:

Josh Liles
Attorney for Appellee
800 N Mallard St
Palestine, TX 75801-2365
lileslaw@gmail.com

John Messinger
Assistant State Prosecuting Attorney
Price Daniel, Sr. Building Suite 203
P.O. Box 13046
Austin, Texas 78711
John.Messinger@SPA.texas.gov

By: /s/ Amber N. Bewley
Amber N. Bewley
Assistant County Attorney