**AFFIRMED and Opinion Filed August 21, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-18-00745-CR**

**RABYL RIYAZ NATHOO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 380-82434-2017**

# MEMORANDUM OPINION

Before Chief Justice Burns, Justice Whitehill, and Justice Partida-Kipness
Opinion by Chief Justice Burns

Rabyl Riyaz Nathoo was indicted for the offense of manslaughter. A jury convicted him of

the lesser included offense of criminally negligent homicide and assessed a sentence of five years'

confinement in the Texas Department of Criminal Justice, Institutional Division, and a fine of

$10,000. On appeal, Nathoo challenges (i) the sufficiency of the evidence supporting the jury's

deadly weapon finding, and (ii) the trial court's refusal to reject the deadly weapon finding. He

also contends that the trial court erred by admitting evidence of a prior traffic accident. We affirm.

## I. BACKGROUND

On the evening of March 27, 2017, two collisions occurred, one subsequent to the other, in

the northbound lanes of the Dallas North Tollway in Frisco, Texas. According to the primary

investigator, DPS Trooper Charles Blommaert, the first collision occurred when the driver of a

Kia SUV lost control of her vehicle, struck a cement barrier on the right side, crossed all lanes of traffic, hit the center cement barrier, spun 180 degrees, hit a minivan in the center lane, and came to a stop blocking the left lane of the road. The minivan proceeded a short distance north on the Tollway and pulled off on the right shoulder. Julia Zaman, a driver who witnessed the collision, stopped to assist the people involved. Zaman pulled off the Tollway, parked on the right shoulder of the road, and activated her emergency flashers. Two more vehicles pulled over and stopped behind Zaman.

As Zaman began to exit from the left side of her Land Rover, the second collision occurred. Two vehicles, one driven by appellant, were traveling at a high rate of speed in the left-hand lane where the disabled Kia was located. According to witnesses, they were racing. The first vehicle was able to swerve into the middle lane, avoid the Kia, and continue traveling north. The second vehicle, appellant's Chevrolet Camaro, swerved to miss the Kia, lost control, and crashed into Zaman and her vehicle. The Camaro careened off the side of Zaman's Land Rover, spun around several times, scattering debris and car parts, and finally came to a stop in a grassy area. Zaman perished; she died almost instantly after her entire body sustained grievous injuries.

Trooper Blommaert talked to appellant at the scene. Appellant told Trooper Blommaert that he was driving 75 to 80 miles per hour, and had been cut off by a BMW. Most of the Tollway is covered by video cameras that are monitored on a 24/7 basis. Trooper Blommaert was able to retrieve and view video of the collisions; he was also able to view traffic on the Tollway prior to the collisions. He testified that the videos indicated that two vehicles—a BMW SUV and appellant's Camaro—were racing; they were swerving from lane to lane around other traffic and were traveling much faster than other traffic. Witnesses informed Trooper Blommaert, and testified at trial, that a BMW or Jeep SUV and a black Camaro appeared to be racing just before the collision. Trooper Blommaert described the damage done to Zaman, to her Land Rover, and to

appellant's Camaro; he stated that the amount of damage showed consistency with a crash involving high speeds.

DPS Trooper Christopher Hampton testified that he downloaded and analyzed information retrieved from the crash data recording device in appellant's Camaro. According to the data, five seconds before appellant's Camaro struck Zaman and her Land Rover, the Camaro was accelerating. Two seconds before appellant's Camaro struck Zaman and her Land Rover, the Camaro was traveling at 130 miles per hour. As appellant swerved, braked, veered to the right, and crashed into Zaman, his speed was 113 miles per hour.

The Collin County medical examiner, William Rohr, M.D., performed an autopsy on Zaman. He testified that the cause of Zaman's death was multiple blunt force injuries—every part of her body sustained extensive injury. He testified that these are the kinds of injuries you would see in an airplane crash.

Appellant was indicted for the offense of manslaughter, and he pled not guilty. A jury found appellant guilty of the lesser included offense of criminally negligent homicide. In its answer to a special issue, the jury found that the State had proved, beyond a reasonable doubt, that appellant used his vehicle as a deadly weapon during the commission of the offense. The jury rejected appellant's request for community supervision and assessed a sentence of five years in prison and a $10,000 fine. This appeal followed.

## II.  DISCUSSION

### A.  Sufficiency of the Evidence — Deadly Weapon

In appellant's first issue, he challenges the sufficiency of the evidence supporting the jury's finding that he used a deadly weapon during the commission of the offense. We review the sufficiency of the evidence to support a conviction by viewing all of the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential

elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018); *see also Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (applying the *Jackson* standard to the review of a deadly weapon finding). In our sufficiency review, we consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). The trier of fact is the sole judge of the weight and credibility of the evidence. *Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 319, *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). We consider only whether the factfinder reached a rational decision. *Arroyo v. State*, 559 S.W.3d 484, 487 (Tex. Crim. App. 2018).

A person commits the offense of criminally negligent homicide if he causes the death of an individual by criminal negligence. TEX. PENAL CODE § 19.05(a). An offense under this section of the penal code is a state jail felony. *Id*. § 19.05 (b). However, a person adjudged guilty of a state jail felony shall be punished for a third degree felony if it is shown on the trial of the offense that a deadly weapon is used or exhibited during the commission of the offense. *Id*. § 12.35(c)(1).

An automobile is not "manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury." PENAL § 1.07(a)(17)(A). But it may, "in the manner of its use or intended use [be] capable of causing death or serious bodily injury." PENAL § 1.07(a)(17)(B); *see Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017). "To justify a deadly weapon finding under Section 1.07(a)(17)(B), the State need not establish that the use or intended use of an implement actually *caused* death or serious bodily injury; only that 'the manner' in which it was either used or intended to be used was 'capable' of causing death or serious bodily injury." *Moore*,

520 S.W.3d at 908 (*citing Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008)). Furthermore, the plain language of the provision does not require that the actor actually intends death or serious bodily injury. *Id.*; *see also Drichas*, 175 S.W.3d at 798 ("Specific intent to use a motor vehicle as a deadly weapon is not required.")

Appellant first argues that the evidence supporting the deadly weapon finding is legally insufficient because the State failed to prove beyond a reasonable doubt that the manner of appellant's use of the vehicle or its intended use was capable of causing death or serious bodily injury. He urges that the evidence supporting a deadly weapon finding using a motor vehicle must show intent, knowledge, recklessness, or at least much more negligence than was shown at appellant's trial.

In *Sierra v. State*, 280 S.W.3d 250 (Tex. Crim. App. 2009), the Court instructed that in conducting an "automobile-as-a-deadly-weapon analysis," we should first "evaluate the manner in which the defendant used the motor vehicle during the felony." 280 S.W.3d at 255. We begin by asking whether the defendant's driving was reckless or dangerous during the commission of a felony. *Moore*, 520 S.W.3d at 910. DPS Trooper Blommaert testified that he was dispatched to the scene of the collision around 10:30 p.m. Even though it was 10:30 at night, there were still a number of vehicles on the Tollway. The jury heard testimony that upon seeing the disabled Kia SUV in the left lane, other vehicles were able to slow and stop, or slow and make a safe lane change. The jury saw video from cameras placed along the Tollway. The video showed several vehicles safely avoiding the disabled Kia. The video also showed the approach of two speeding vehicles. The first vehicle successfully swerved around the Kia, into the middle lane, and continued north on the Tollway. The second vehicle swerved and slammed into a vehicle on the right shoulder of the road.

The jury knew exactly how fast appellant was driving his Camaro. The data from the crash data recording device in appellant's Camaro established that appellant was driving 130 miles per hour and accelerating just seconds before the crash. The device also recorded appellant's attempt to brake at the last second, and his speed of 113 miles per hour at the moment of impact. Both Trooper Blommaert and Trooper Hampton testified that 130 miles per hour is an excessive speed; they also stated that there is no justifiable reason for a person to be driving at such an unsafe speed on the Tollway.

The jury was shown video of the two speeding vehicles as they proceeded north on the Tollway. One video clip showed appellant cut across all lanes of traffic, from the left lane to the right lane, while traveling at a speed faster than the other vehicles on the road. The jury also heard witness testimony that, prior to the collision, appellant appeared to be racing with another vehicle at high speeds, passing other vehicles on the road, weaving in and out of traffic, and making rapid lane changes. On this record, the jury could have found beyond a reasonable doubt that appellant's manner of using his car—including dangerous speed, racing, weaving in and out of traffic, and the time and place of the offense—was reckless or dangerous. *Sierra*, 280 S.W.3d at 256; *see also Daniel v. State*, 478 S.W.3d 773, 781 (Tex. App.—Fort Worth 2015, no pet.) (appellant's manner of using his car, including racing, cutting off other cars, jumping lanes, driving aggressively at more than twice the speed limit, qualified the car as a deadly weapon).

The *Sierra* Court described our second consideration to be "whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Sierra*, 280 S.W.3d at 255. Appellant asserts that the State failed to prove that the manner of appellant's use of the vehicle facilitated a felony. Noting that speeding is not a felony, he argues that the State only proved that appellant used the vehicle to commit the misdemeanor offense of speeding, stating: "[t]he use of a deadly weapon to facilitate a felony requires the deadly weapon to be used to commit the

–6–

'gravamen of the (felony) offense' and **not** merely turn a misdemeanor (speeding) into a felony like criminally negligent homicide." However, the offense here was not misdemeanor speeding.

Appellant was charged with the felony offense of manslaughter, not misdemeanor speeding. A jury convicted appellant of the felony offense of criminally negligent homicide, not misdemeanor speeding. The record establishes that appellant's Camaro did indeed cause the death of Zaman. Because the gravamen of criminally negligent homicide is the death of the victim, appellant's car facilitated that felony. *See Sierra,* 280 S.W.3d at 256 (vehicle found to be capable of causing serious bodily injury because record established that vehicle indeed caused serious bodily injury); *Delgadillo v. State*, No. 08-01-00455-CR, 2004 WL 1375404, at *10 (Tex. App.— El Paso June 17, 2004, pet. ref'd) (not designated for publication) ("Appellant's use of her vehicle facilitated the associated felony of criminally negligent homicide and actually caused death, therefore the jury's affirmative deadly weapon finding was permissible."). We conclude that, viewed in the light most favorable to the verdict, the evidence is legally sufficient to support the jury's finding that appellant's Camaro was used as a deadly weapon. We overrule appellant's first issue.

## B. Punishment Range Enhancement

In his second issue, appellant asserts that the trial court should have disregarded the jury's finding that appellant used a deadly weapon during the commission of the offense. He argues that the deadly weapon finding did not affect the punishment range, and the jury was not asked to determine that appellant knew his car was a deadly weapon.

Appellant did not object to the inclusion, or the language, of the deadly weapon special issue in the trial court's jury charge at the guilt/innocence phase of the trial. In addition, we do not find, nor has appellant directed us to, anything in the record to show that appellant requested the trial court to disregard the jury's verdict on the deadly weapon special issue. Therefore, to the

extent that appellant's second issue encompasses either of those claims, they were not preserved for our review. Before presenting a complaint for appellate review, the record must show that (i) it was made to the trial court by a timely request that made the court aware of the grounds for the requested ruling, and (ii) the trial court ruled or refused to rule on the request. TEX. R. APP. P. 33.1(a)(1).

Appellant argues that because the jury's answer to the deadly weapon special issue did not include a finding that he *knew* his car was being used as a deadly weapon, the court should not have applied section 12.35(c)(1) of the Texas Penal Code to enhance his punishment range from a state jail felony to a third degree felony. Criminally negligent homicide is a state jail felony. PENAL § 19.05(b). Section 12.35 establishes the punishment for state jail felonies as confinement in a state jail facility for not more than two years nor less than 180 days and a maximum fine of $10,000. *Id.* § 12.35(a), (b). However, section 12.35 also includes the following enhancement provision:

> (c) An individual adjudged guilty of a state jail felony shall be punished for a third degree felony if it is shown on the trial of the offense that:

> (1) a deadly weapon as defined by Section 1.07 was used or exhibited during the commission of the offense or during immediate flight following the commission of the offense, and that the individual used or exhibited the deadly weapon or was a party to the offense and knew that a deadly weapon would be used or exhibited.

*Id.* § 12.35(c)(1). Thus, a deadly weapon finding in a criminally negligent homicide conviction increases the punishment range to that of a third degree felony. The sentence for a third degree felony is imprisonment for not more than ten years nor less than two years and a maximum fine of $10.000. *See id.* § 12.34.

Statutory construction is a question of law, which we review de novo. *Sims v. State*, 569 S.W.3d 634, 640 (Tex. Crim. App. 2019). When construing statutes, we "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We focus our analysis on the literal text of the statute

and "attempt to discern the fair, objective meaning of that text at the time of its enactment." *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014) (citing *Boykin*, 818 S.W.2d at 785). We presume that the legislature intended for every word to have a purpose, and we should give effect if reasonably possible to each word, phrase, and clause of the statutory language. *Johnson v. State*, 423 S.W.3d 385, 394 (Tex. Crim. App. 2014). We read the words and phrases contained in the statute in context and construe them according to normal rules of grammar and usage. *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011). If the language of the statute is plain, we follow that language unless it leads to absurd results that the legislature could not have possibly intended. *Oliva v. State*, 548 S.W.3d 518, 521 (Tex. Crim. App. 2018).

Appellant argues that section 12.35(c)(1) does not apply to him because the jury did not find that he "knew that a deadly weapon would be used." However, the statute does not lend itself to appellant's interpretation. The knowledge requirement applies to an individual convicted as a party to the offense, not to the individual who used or exhibited the deadly weapon. Subsection (c)(1) contains two clauses separated by a comma and joined by the conjunction "and." Thus, for (c)(1) to apply, both clauses are required. The second clause describes "the individual" who was adjudged guilty of a state jail felony in (c), and provides two descriptions separated by the word "or." The "individual" is either the person who used or exhibited the deadly weapon or is a person who was a party to the offense and knew that a deadly weapon would be used or exhibited.[1] Because there is no comma following the phrase "or was a party to the offense," the language "and knew that a deadly weapon would be used or exhibited" can only apply to the individual who was a party to the offense. Giving effect to every word, phrase, and clause of this statutory provision,

---

[1] *Compare* TEX. CODE CRIM. PROC. ANN. art. 42A.054(b). The language in this provision pertaining to community supervision limitations is almost identical to the language in Texas Penal Code section 12.35(c)(1). However, article 42A.054(b)(2) clearly separates the two clauses, by stating, "the defendant: (A) used or exhibited the deadly weapon; or (B) was a party to the offense and knew that a deadly weapon would be used or exhibited."

the plain language of the statute cannot be interpreted to require that the individual who used the deadly weapon also had to *know* that a deadly weapon would be used.

Appellant also argues that an object must be used with knowledge of its actual capability before a deadly weapon finding should be utilized to enhance the punishment; otherwise, every criminally negligent homicide will always be punished as a third degree felony. In *Chambless v. State*, 411 S.W.3d 498 (Tex. Crim. App. 2013), the Court considered this premise and found it to be flawed. The Court found that "a person may use or exhibit a 'deadly weapon' in the course of committing a criminally negligent homicide, but it is not necessarily so." *Id*. at 503 (rejecting the argument that deadly weapon findings should not apply to criminally negligent homicides). The Court concluded that applying section 12.35(c)(1) to criminally negligent homicides "does not lead to absurd results that the Legislature could not have possibly intended." *Id*.

Appellant also argues that he lacked notice of the range of punishment associated with a potential deadly weapon finding. We are not persuaded by this argument. "It is well settled law that an allegation of serious bodily injury or death caused by some act or instrument is sufficient notice for a deadly weapon finding." *Dotson v. State*, 146 S.W.3d 285, 300 (Tex. App.—Fort Worth 2004, pet. ref'd). Here, the indictment alleged that appellant used his car as a deadly weapon in the commission of the offense. We conclude appellant had sufficient notice of the nature of the accusation against him so that he could prepare a defense, *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004), and sufficient notice that the State intended to pursue a deadly weapon finding, *Garcia-Arrendondo v. State*, No. 05-17-00814-CR, 2018 WL 6566683, at *9 (Tex. App.—Dallas Dec. 13, 2018, pet. ref'd) (mem. op., not designated for publication). We overrule appellant's second issue.

## C. Extraneous Evidence

In his third issue, appellant complains that the trial court erred by admitting evidence of a prior traffic accident and citation for unsafe speed. We examine a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Id.* at 83. We uphold the trial court's ruling if it is reasonably supported by the evidence and is correct under any theory of law applicable to the case. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

At trial, the State called DPS Trooper Tyler Humphries to testify about his investigation of a collision in August 2016, in which he cited appellant for unsafe speed. Appellant objected to Humphries' testimony, arguing that it was not relevant, but even if it were, any relevancy was substantially outweighed by the danger of unfair prejudice. The State responded that evidence of the prior collision and citation for unsafe speed involved similar events and circumstances and thus, was relevant to show that appellant was aware of the risks involved in driving at an unsafe speed. Rule 403 allows for the exclusion of otherwise relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. TEX. R. EVID. 403; *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2010). Rule 403 creates a presumption that relevant evidence will be more probative than prejudicial. *Hernandez v. State*, 390 S.W.3d 310, 323 (Tex. Crim. App. 2012). All evidence is prejudicial to one party or the other; thus, it is only when there is a clear disparity between the degree of prejudice and the probative value that rule 403 is applicable. *Id.* at 324. Once a rule 403 objection is asserted, the trial court must engage in the balancing test required by that rule. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). However, the trial court is not required to place the results of its balancing test on the record. *Williams v. State*, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997). "Rather, a judge is presumed to

engage in the required balancing test once Rule 403 is invoked," and the trial court's failure to conduct the balancing test on the record does not imply otherwise. *Id.* at 195–96.

Appellant also objected to Humphries' testimony on the basis that the evidence was inadmissible character evidence. In response, the State urged that the evidence was admissible to rebut the defensive theory that appellant did not know the risk of his actions. "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). In general, evidence of other crimes, wrongs, or acts is not admissible to prove bad character or conduct in conformity but may be relevant and admissible for other purposes like proving motive, intent, or absence of mistake, during the guilt-innocence phase of trial. *See* TEX. R. EVID. 404(b)(1); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). In addition, such evidence may be admissible when it is relevant to a noncharacter-conformity fact of consequence, such as rebutting a defensive theory. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001); *see also* TEX. R. EVID. 404(b)(2). As the court of criminal appeals has observed:

> [T]he proponent of the evidence may persuade the trial court that the "other crime, wrong, or act" has relevance apart from character conformity; that it tends to establish some elemental fact, such as identity or intent; that it tends to establish some evidentiary fact, such as motive, opportunity or preparation, leading inferentially to an elemental fact; or that it rebuts a defensive theory by showing, e.g., absence of mistake or accident.

*Powell*, 63 S.W.3d at 438 (quoting *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim. App. 1990) (op. on reh'g)); *see also Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). If the defendant's defensive theory opens the door to such rebuttal evidence, the State may introduce evidence of extraneous conduct that shares common characteristics with the charged offense. *Powell*, 63 S.W.3d at 438; *Anderson v. State*, No. 05-16-01157-CR, 2017 WL 5897903, at *7–8 (Tex. App.—Dallas Nov. 29, 2017, pet. ref'd) (mem. op., not designated for publication).

The trial court conducted a hearing outside the presence of the jury, allowing the parties to examine Humphries and to present argument regarding the admissibility of the evidence. The State argued that Humphries should be allowed to testify before the jury because the defense had opened the door to this evidence by arguing that appellant lacked the requisite mens rea to have committed the offense of manslaughter and should have been charged with criminally negligent homicide. The State offered Humphries' testimony to rebut that defensive theory and to show that appellant was aware of the risks of driving at an unsafe speed. At the conclusion of the hearing, the trial court ruled that the State could present evidence of the prior collision and citation, but the court cautioned that the evidence was admissible "for the limited purpose of showing the Defendant's state of mind, that is, his intent or knowledge at the time of the conduct alleged in the indictment." The court also stated that "it is admissible evidence to establish that the Defendant had been placed on notice with respect to that conduct that is alleged in the indictment. So I'm going to allow it for those purposes, that is, as evidence of intent, state of mind, knowledge and notice."

Humphries then testified that on August 26, 2016, he was dispatched to a two-vehicle collision on the entrance ramp and main lanes of southbound Dallas North Tollway at Spring Creek Road. Appellant was initially driving on the service road; he then drove onto a Tollway entrance ramp that had mud and standing water in some places. Trooper Humphries determined that when appellant hit the muddy area, he lost control of his vehicle. He overcorrected and drove into a paved culvert. Appellant's vehicle then traveled up an embankment, struck the guardrail, went airborne, and landed on the hood of a Toyota Camry that was traveling on the Tollway. Trooper Humphries stated that he did not know the speed at which appellant was traveling. Nevertheless, the trooper determined that appellant was traveling at an unsafe speed for the roadway conditions, and issued a citation. Appellant was given a deferred disposition; after he completed a driver safety course, his case was dismissed.

The record establishes that the court carefully considered the evidence. We presume the court applied the Rule 403 balancing test to find the probative value of the evidence outweighed the prejudice to appellant. The court also acknowledged the defensive theory of the case and concluded that the evidence would be admitted to rebut that theory. While evidence of extraneous acts is almost always inherently prejudicial and carries the potential to impress the jury of a defendant's character conformity, this potential can be minimized through a limiting instruction. TEX. R. EVID. 105(a); *Montgomery*, 810 S.W.2d at 388. Here, the trial court instructed the jury that they could only consider the evidence for the limited purpose of determining appellant's state of mind and/or to show that appellant had received notice about driving at an unsafe speed prior to the conduct alleged in the indictment in this case.

Because the trial court's decision to admit evidence of appellant's prior collision and citation for unsafe speed was within the zone of reasonable disagreement, there was no abuse of discretion in the admission of this evidence. *See Moses*, 105 S.W.3d at 627. We overrule appellant's third issue.

### III. CONCLUSION

Having resolved all of appellant's issues against him, we affirm the judgment of the trial court.

/Robert D. Burns, III/
_____
ROBERT D. BURNS, III
CHIEF JUSTICE

Do Not Publish
TEX. R. APP. P. 47
180745F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RABYL RIYAZ NATHOO, Appellant

No. 05-18-00745-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 380th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 380-82434-2017.
Opinion delivered by Chief Justice Burns.
Justices Whitehill and Partida-Kipness
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered August 21, 2019