

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-14-00246-CR

DAVID ALAN DANIEL                                                         APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1355862R

----------

## OPINION

----------

Appellant David Alan Daniel appeals his convictions for two counts of racing on a highway.[1]  In three issues, he contends that the evidence is insufficient to support the jury's verdicts and that a material variance exists between the indictment and the evidence presented at trial.  We affirm.

---

[1]*See* Tex. Transp. Code Ann. § 545.420(a)(1) (West 2011).

## Background Facts

One evening in November 2011, Jose Reyes-Ramirez and his cousin, Ruben Escalante, decided to go to a gym in Arlington. Reyes-Ramirez drove his car, and Escalante rode in the front passenger seat. Neither of them wore seatbelts.

That same evening, appellant, who was driving a gray car, and David Cabrera, who was driving a small white car, loudly raced down streets in Arlington.[2] The two drivers went "extremely fast" while aggressively switching lanes and jumping back and forth in front of each other. Cabrera's car almost hit a pedestrian, and the cars did not slow down even when passing a police station.

On their way to the gym, Escalante and Reyes-Ramirez reached the intersection of Cooper Street and Road to Six Flags Street and planned to turn left. They had an unprotected green light to make the turn, and Reyes-Ramirez drove into the intersection. After he completed the turn but while the car was still in the intersection, Cabrera's car, which had a green light to drive straight through the intersection, slammed into the passenger side of Reyes-Ramirez's car. According to Escalante, the crash happened so quickly that he "couldn't even scream or say something."

---

[2]Although appellant contested at trial whether he had raced with Cabrera, he concedes on appeal that the "evidence presented was sufficient to support a verdict for racing." As explained below, he challenges the sufficiency of the evidence to prove the aggravating allegations that his racing resulted in Reyes-Ramirez's death and Escalante's injury.

The crash sounded like an explosion. It scattered sparks and debris across the road as Cabrera's car briefly lost connection with the road and Reyes-Ramirez's mangled car spun and then careened onto a curb. The collision caused Reyes-Ramirez's car to travel 128 feet from the intersection to its final resting place on the curb.

When the crash occurred, Cabrera, whose car was heavily damaged on its front end, stopped, but appellant, who was driving side-by-side to the left of Cabrera's car at the time of the crash and narrowly missed colliding with the back end of Reyes-Ramirez's car, "slowed down a little bit [and] then . . . just kept going" at a speed of, according to one eyewitness, between seventy and eighty miles per hour.[3]

After the crash, Escalante noticed that Reyes-Ramirez was unconscious and yelled for help. A witness of the crash called 9-1-1. The crash broke Escalante's pelvis, and he could not move. He later had surgery and spent a week in the hospital. Reyes-Ramirez, who bled at the scene of the crash, died at

_____

[3]The speed limit on that part of Cooper Street is thirty-five miles per hour. A police officer who is trained in accident reconstruction testified that Cabrera's car was traveling seventy-eight to eighty-two miles per hour when the crash occurred, and she opined that appellant was driving only slightly slower. Another witness trained in accident reconstruction testified that Cabrera's car was traveling eighty-five miles per hour at the time of the crash, that appellant had driven eighty-two miles per hour through the intersection, and that Reyes-Ramirez was traveling nineteen miles per hour when the collision occurred. That witness also stated that when Reyes-Ramirez began making his left turn, Cabrera's car was close to 600 feet, or two football fields, away.

a hospital after unsuccessful brain surgery.[4]  Cabrera did not suffer any apparent serious injuries.

The police eventually found appellant, and he gave oral and written statements to the police.  In his written statement, he said that he had been driving on Cooper Street, that he had a green light to proceed through the intersection of Cooper Street and Road To Six Flags Street, that Reyes-Ramirez's car had "turned in front of [him]," and that after he had driven through the intersection, he had not seen "anything else, . . . and [he] continued to drive home."  In his oral statement, he said that he had been traveling forty to forty-five miles per hour at the time of the crash; he continued to claim that he had not seen or heard the crash.  He also told the police that he had not seen Cabrera's car at any point prior to the crash.

A grand jury indicted appellant for two counts of racing.  The indictment alleged that as a result of appellant's participation in the race, Reyes-Ramirez died and Escalante suffered bodily injury.  The indictment also included an allegation that appellant had used or exhibited his car as a deadly weapon during the race.  Appellant pled not guilty and chose the jury to assess his punishment if he was convicted.

---

[4]At trial, appellant's counsel stated, "There's no real contest as to whether [Reyes-Ramirez] was killed as a result of the accident."  A medical examiner testified that Reyes-Ramirez underwent significant treatment at the hospital over a couple of days before dying and that his cause of death was blunt force trauma.

4

Appellant testified at his trial. He stated that on the night of the wreck, he had just left a class at a university and that Cabrera was also a student in the class. He testified that he had left the university while intending to drive home, that he had never zigzagged between lanes or engaged in a race with Cabrera on the night of the wreck, and that he had not seen the crash. He stated, "A car passed in close proximity in front of me, but I made it through [the intersection okay]. . . . And everything else that night was just a normal night until I got home and had some cake with my little girl." Appellant testified that he had believed he was driving forty-five to fifty miles per hour at the time of the crash. Regarding his failure to notice the crash despite his presence alongside it when it occurred, appellant testified, "I must have been either looking at the next car coming on to make sure it wasn't going to turn in front of me or I was looking straight ahead. I have no idea how I didn't see it."

The jury found appellant guilty of both counts and determined that he had used or exhibited a deadly weapon during the offense. After hearing evidence and arguments relating to appellant's punishment, the jury assessed two years' confinement for the count concerning Reyes-Ramirez's death and ten years' confinement, while recommending appellant's placement on community supervision, for the count concerning Escalante's injury. The trial court entered judgments in accordance with the jury's verdicts; the court sentenced appellant to two years' confinement under count one of the indictment and assessed ten

years' confinement under count two but suspended the sentence while placing him on community supervision for ten years. Appellant brought this appeal.

## Evidentiary Sufficiency

In his first and third issues, appellant contends that the evidence is insufficient to support his convictions and to support the jury's affirmative deadly weapon finding. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014); *see also Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (applying the *Jackson* standard to the review of a deadly weapon finding). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are

reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

**Evidence supporting appellant's convictions**

A person commits an offense by participating in a race while driving. Tex. Transp. Code Ann. § 545.420(a)(1), (b)(2). That offense is typically a Class B misdemeanor. *Id.* § 545.420(d). But the offense is a second-degree felony "if it is shown on the trial of the offense that as a result of the offense, an individual suffered serious bodily injury or death." *Id.* § 545.420(h). Similarly, the offense is a third-degree felony "if it is shown on the trial of the offense that as a result of the offense, an individual suffered bodily injury." *Id.* § 545.420(g).

In his first issue, appellant does not contest that he was racing with Cabrera, as he did through his testimony and argument at trial. He contests only whether the act of racing with Cabrera resulted in Escalante's injury and Reyes-Ramirez's death. He argues that "there was no evidence presented to the jury that something that he did while racing caused the injury and/or the death."

To resolve this issue, we must first determine what the "result of" language in section 545.420 means. *See id.* § 545.420(g), (h). The parties have not cited any cases construing or applying the "result of" language in section 545.420, nor

7

have we found any. When construing a statute, we first look to its literal language to ascertain its meaning. *Butcher v. State*, 454 S.W.3d 13, 15 (Tex. Crim. App. 2015). If the language of the statute is plain, we generally interpret the statute according to that plain language. *Id.* at 15–16; *see Chase v. State*, 448 S.W.3d 6, 11 (Tex. Crim. App. 2014). A "result" is a "consequence" or an "effect." Webster's Third New Int'l Dictionary 1937 (2002).

Recently, in *Hanna v. State*, the court of criminal appeals discussed and applied "result of the offense" language in another statutory context. *See* 426 S.W.3d 87, 95 (Tex. Crim. App. 2014). There, the court examined article 42.037 of the code of criminal procedure, which is a criminal restitution statute that requires the State to prove that a victim sustained a loss "as a result of the offense." *Id.* at 92; *see* Tex. Code Crim. Proc. Ann. art. 42.037(k) (West Supp. 2014). Applying the statute's plain language, the court held that the "result of the offense" language in article 42.037 included "the notion of both actual and proximate causation." *Hanna*, 426 S.W.3d at 91, 95. Thus, the court held that under the restitution statute, the State must prove that the victim's loss is both a "but for" result of the criminal offense and that the loss was foreseeable. *Id.* at 95.

Section 545.420 is similar to article 42.037 because in both provisions, the State must prove that a particular harm resulted from the offense. *See* Tex. Code Crim. Proc. Ann. art. 42.037(k); Tex. Transp. Code Ann. § 545.420(g), (h). Thus, like in *Hanna*, we will determine whether appellant's racing offense directly

and proximately caused Reyes-Ramirez's death and Escalante's bodily injury. *See Hanna*, 426 S.W.3d at 95; *see also Williams v. State*, 235 S.W.3d 742, 764 (Tex. Crim. App. 2007) ("Obviously, some element of foreseeability limits criminal causation . . . . Criminal liability is predicated on 'but-for' causation, and [a defendant's] acts are not a 'but-for' cause . . . unless [the] result is within the scope of the risk of which [the defendant] was aware." (footnote omitted)).

Under that framework, viewing the evidence in the light most favorable to the jury's verdicts, we conclude that a rational jury could have determined beyond a reasonable doubt that appellant's racing with Cabrera was a "but-for" cause of Reyes-Ramirez's death and Escalante's injury. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170. Specifically, the jury could have rationally concluded that if appellant had not been racing with Cabrera, Cabrera would not have sped at approximately eighty miles per hour through the intersection and would not have therefore collided with Reyes-Ramirez's car. One of the State's accident-reconstruction witnesses testified, "[Cabrera's and appellant's] vehicles were engaged back down toward the college, and they engaged one another all the way up through here until it resulted in the death of [Reyes-Ramirez]." That witness noted (and the video recording of the crash confirmed) that when the accident happened, appellant was "right there, and the wreck [was] occurring right off his front right quarter panel." The witness further testified that the engagement between appellant's car and Cabrera's car contributed to Cabrera's speed, which in turn contributed to the accident. From

9

this testimony and the other evidence presented at trial, the jury could have reasonably inferred that if appellant had not been racing with Cabrera, the accident, and the resulting death and injury, would not have occurred. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170. We cannot conclude, as appellant appears to argue, that the death and injury were not a "result of the offense" merely because his car avoided the crash.

Likewise, we hold that a rational jury could have determined beyond a reasonable doubt that Reyes-Ramirez's death and Escalante's injury were foreseeable results of the offense. The evidence showed that near 8 p.m. on the evening of the crash, appellant and Cabrera raced on Cooper Street, which was located in an urban, congested area (including proximity to businesses, residences, and a university); was connected to an interstate highway; was well-traveled; and contained several intersections controlled by traffic lights.[5] One witness, who had a green light to turn left onto Cooper Street after leaving a gas station, testified that he did not do so because he could hear loud mufflers from acceleration, and he recognized the danger of proceeding into the intersection. Another witness testified that she saw appellant and Cabrera driving aggressively

---

[5]One witness who was traveling on Cooper Street that night testified, "It's letting out [of] the [university] right [at] this moment. Everyone is coming out of [the university], and they're, you know, going home. So it's traffic. And I'm already complaining to my boyfriend at the time that he shouldn't take Cooper."

and cutting each other off,[6] that she saw Cabrera's car almost hit a pedestrian before the crash, and that other cars on the road adjusted to make way for the two racing cars. The two accident reconstruction witnesses testified that at the time of the crash, the two racing cars were traveling at over twice the speed limit of thirty-five miles per hour. Viewing these facts and the remaining evidence in the light most favorable to the verdicts, we conclude that a rational jury could have found beyond a reasonable doubt that a crash causing death or injury was a foreseeable result of appellant's high-speed, aggressive, side-by-side race with Cabrera. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

Appellant appears to contend that Cabrera's conviction for manslaughter in connection with the accident precludes appellant's responsibility under section 545.020 for Reyes-Ramirez's death and Escalante's injury. But appellant has not directed us to any authority indicating that both he and Cabrera may not be held criminally responsible for causing the death and injury, and we have found none. *Cf. Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001) ("More than one act may be the proximate cause of the same injury."); *J. Wigglesworth Co. v. Peeples*, 985 S.W.2d 659, 663 (Tex. App.—Fort Worth 1999, pet. denied) ("To proximately cause an injury, an actor need not be the last cause, or the act

---

[6]This witness testified, "It was like Fast and Furious because they're going in and out. . . . It was like watching a movie. It's like zoom zoom zoom."

11

immediately preceding an injury. Moreover, there can be more than one proximate cause of an accident." (citation omitted)).

Appellant also appears to argue that the death and injury did not result from his offense because Reyes-Ramirez turned his vehicle in front of Cabrera's and appellant's cars and because neither Reyes-Ramirez nor Escalante were wearing seatbelts. Again, however, appellant directs us to no authority indicating that the State was required to prove that the offense was the sole cause of the death and injury, and we have found none.[7] We decline to hold that the State had the burden to prove that appellant's racing offense caused the death and injury to the exclusion of all other potentially contributing factors.

Because the evidence, when viewed in the light most favorable to the verdicts, is sufficient to show that appellant's racing with Cabrera was a "but-for" and proximate cause of Reyes-Ramirez's death and Escalante's injury, we conclude that it is likewise sufficient to show that "as a result of [appellant's] offense," Reyes-Ramirez died and Escalante was injured. *See* Tex. Transp. Code Ann. § 545.420(g), (h); *Hanna*, 426 S.W.3d at 95. We overrule appellant's first issue.

---

[7]We note that the medical examiner could not conclude whether Reyes-Ramirez would have died if he had been wearing his seatbelt at the time of the crash. We also note that an accident reconstruction expert testified that if appellant and Cabrera had been driving at the speed limit, Reyes-Ramirez's car would have cleared the intersection with seconds to spare.

**Evidence supporting deadly weapon finding**

In his third issue, appellant argues that the evidence is insufficient to support the jury's finding that he used or exhibited a deadly weapon during the commission of his offense. A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2014); *Orona v. State*, 341 S.W.3d 452, 460 (Tex. App.—Fort Worth 2011, pet. ref'd). For evidence to be sufficient to sustain a deadly weapon finding, it must demonstrate that the object meets the statutory definition of a deadly weapon, that the deadly weapon was used or exhibited "during the transaction from which" the felony conviction was obtained, and that other people were put in actual danger. *Drichas*, 175 S.W.3d at 798. "A motor vehicle may become a deadly weapon if the manner of its use is capable of causing death or serious bodily injury. Specific intent to use a motor vehicle as a deadly weapon is not required." *Id.* (citation omitted); *see also Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003) ("An automobile can be a deadly weapon if it is driven so as to endanger lives.").

In *Drichas*, the appellant contended that he had not used his truck as a deadly weapon while evading detention. 175 S.W.3d at 796. The evidence showed that the appellant had

> recklessly pulled out of a gas station parking lot, spinning his wheels, failing to yield to oncoming traffic, and cutting off [a police officer], forcing him to slam on the brakes of his unmarked police car. [The officer] followed appellant's truck for a short distance and observed appellant's truck fishtail as appellant, at a high speed, ran a stop

13

sign and attempted to make a left turn. [The officer] activated his lights, and appellant fled.

Appellant ultimately led law enforcement officers from three agencies on a fifteen-mile high-speed chase into Texas, during which he drove at speeds, 50 to 70 miles per hour, that caused his truck to fishtail on turns and reduced appellant's ability to control it. Appellant disregarded traffic signs and signals, drove erratically, wove between lanes and within lanes, turned abruptly into a construction zone, knocking down barricades as he did so, and drove on the wrong side on the highway. . . . [T]raffic was present on the road during the chase. The pursuit ended when appellant turned into a mobile-home park and abandoned his still moving truck to flee on foot, thus allowing the truck to roll into a parked van, which then hit a mobile home.

*Id.* at 797–98. The court of criminal appeals held that this evidence was sufficient to prove that the truck was a deadly weapon by the manner of its use, explaining,

Appellant's manner of using . . . his truck posed a danger to pursuing officers and other motorists that was more than simply hypothetical; the danger was real, and the manner in which appellant drove his truck made it capable of causing death or serious bodily injury, particularly where appellant drove on the wrong side of the highway.

*Id.* at 798.[8]

Similarly, viewing the evidence in this case in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a

---

[8]In his argument, appellant relies on *Drichas*. He also relies on a case from one of our sister intermediate appellate courts, but that case is distinguishable. *See Brister v. State*, 414 S.W.3d 336, 344 (Tex. App.— Beaumont 2013) (holding that evidence was insufficient to support a deadly weapon finding when the testimony showed only that the defendant's car crossed the center line of a roadway one time), *aff'd*, 449 S.W.3d 490 (Tex. Crim. App. 2014).

reasonable doubt that appellant's manner of using his car—including racing on a congested and busy street at night, cutting off Cabrera while requiring other cars on the roadway to adjust, "jumping back and forth" between lanes, driving "very aggressive[ly]" and more than twice the speed limit, and coming within feet of hitting the back end of Reyes-Ramirez's car in the intersection—qualified the car as a deadly weapon. *See id.*; *see also* Tex. Penal Code Ann. § 1.07(a)(17)(B); *Cook v. State*, 328 S.W.3d 95, 100 (Tex. App.—Fort Worth 2010, pet. ref'd) (stating that in determining whether a vehicle was used as a deadly weapon, we may consider whether the driver sped, disregarded traffic signs and signals, and drove erratically). We overrule appellant's third issue.

### Alleged Variance

In his second issue, appellant argues that the "evidence [is] insufficient to support the verdict because a material variance exists between the indictment and the evidence." After carefully reviewing the argument in the second issue, we conclude that it merely restates the argument from the first issue—that the evidence is allegedly insufficient to prove the allegations from the indictment that as a result of appellant's offense, Reyes-Ramirez died and Escalante was injured.[9] Thus, for the same reasons we overruled appellant's first issue, we

---

[9]In the "Application of Law to Facts" section of his second issue, appellant contends,

> The jury charge correctly required that the jury find that "as a result of the Defendant participating in said race" that Reyes-Ramirez died and/or that Escalante was injured. The evidence[,]

15

overrule his second issue.

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgments.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and SUDDERTH, JJ.

PUBLISH

DELIVERED:  July 2, 2015

---

however, establishes at best that Daniel was racing.  It does not show that something that he did while racing caused the death or the injury.  [Record citation omitted.]

As the State asserts, appellant contends in his second issue that the "State wholly failed to prove an essential element of the charged offense," not that the "State proved the commission of the charged racing offenses in a manner that varied from the indictment's allegations."