

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-16-00015-CR

MARK SORENSEN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                    STATE

----------

FROM THE 158TH DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. F15-2175-158

----------

### MEMORANDUM OPINION[1]

----------

Appellant Mark Sorensen appeals his first-degree-felony conviction and fifty-year sentence for aggravated assault with a deadly weapon against a member of his family or household.[2] In three issues, he contends that the evidence was insufficient to prove that he used a deadly weapon during the

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Penal Code Ann. § 22.02(a)(1), (b)(1) (West 2011).

assault, that a provision in the guilt/innocence jury charge incorrectly stated the law and egregiously harmed him, and that the trial court erred by failing to instruct the jury to disregard parts of the State's closing argument. We affirm.

**Background Facts**

Appellant lived with and dated K.J. (Kimberly).[3] One day in March 2014, appellant dropped Kimberly off near a library, but when she noticed that the library was closed, she waited near a park, hoping that appellant would pick her up. Eventually, when Kimberly began walking toward a dollar store to buy a jacket, she saw one of her friends, and she spent the night at the friend's house.

The next morning, Kimberly's friend took her to appellant's house. When Kimberly went inside the garage to see what appellant was doing, she saw him inside the house and noticed that he was upset, so she "stood in the garage for a while." Appellant noticed Kimberly's presence and told her to go to the backyard. When she did so, he pulled her sweatshirt over her head, drug her around, and started kicking her stomach and side. Appellant placed Kimberly in a choke hold with his forearm. She began blacking out and "seeing spots." When Kimberly attempted to get away, appellant hit her with a tree branch and with his hands. Kimberly attempted to stop the assault by grabbing appellant's crotch area.

During the assault, appellant's parents arrived at the house, and he stopped beating Kimberly. Although she had only one shoe on, could not

---

[3]To protect the victim's anonymity, we use an alias.

2

breathe well, and had pain in her ribs, she attempted to run through the house and outside to a nearby business.[4]  Appellant's parents saw her, noticed that she was crying, and asked her if she was okay but realized that she was not. Kimberly told them that she could not breathe, and according to her testimony, they offered to take her to a hospital, but she declined.[5]  They also offered to take her to a dollar store to get cigarettes, a drink, and shoes, and she agreed.

Kimberly eventually went back to her friend's house.  The next day, she went to her mother's house.  According to her mother, Kimberly was "very [shaken] up" and was "[h]urting"; she had scratches and bruises and "couldn't take a deep breath."  After speaking to her mother, Kimberly went to a police station to report the assault and to a hospital.  At the station, a police officer noticed that Kimberly had bruising and scratches and had a hard time walking and breathing.

At the hospital, Kimberly learned that her lung was thirty to forty percent collapsed and that she required emergency surgery.  The surgery resulted in the placement of a chest tube.  A surgeon told Kimberly that if appellant had choked her for ten more seconds, she could have died.  Kimberly spent two days in the

---

[4]While she was running through the house, Kimberly saw a man lying on the floor.  She later learned that the man, appellant's best friend, had died that morning.

[5]Appellant's mother testified that she did not offer to take Kimberly to the hospital.  Appellant's mother also testified that Kimberly did not have trouble breathing at that time and that she did not know that Kimberly had been injured.

hospital. While she was there, police officers visited her and interviewed her about what had transpired.

A grand jury indicted appellant for aggravated assault; the indictment alleged that he had caused serious bodily injury to Kimberly, that she was a member of his family or household when the assault occurred, and that he had used or exhibited a deadly weapon during the assault. Appellant filed various pretrial motions, chose the jury to assess his punishment in the event of a conviction, and pled not guilty.

At trial, Dr. Lalit Mahajan, who treated Kimberly after the assault, testified that she presented to the hospital with shortness of breath and was diagnosed as having a pneumothorax that required treatment through a chest tube. Dr. Mahajan described a pneumothorax as a "collapsed lung" caused by trauma, and he stated that a pneumothorax may cause death through respiratory arrest or cardiac arrest if it is not treated. Dr. Mahajan also explained that a pneumothorax impairs the function of the lungs and that Kimberly's pneumothorax was severe enough that it could not have healed by itself without treatment. He testified that Kimberly did not have "other history"—such as chronic obsessive pulmonary disorder—to believe that something other than appellant's assault caused her pneumothorax.

After receiving the parties' evidence and arguments, the jury found appellant guilty. The jury then received more evidence and arguments concerning his punishment, including his prior convictions and past episodes of

domestic violence, and assessed fifty years' confinement. The trial court sentenced him accordingly, and he brought this appeal.

## Evidentiary Sufficiency

In his first issue, appellant contends that the evidence is insufficient to prove that he used his foot, hand, or a branch as a deadly weapon, as the indictment alleged. To obtain a first-degree-felony conviction for aggravated assault under the circumstances here, the penal code required the State to prove that appellant (1) intentionally, knowingly, or recklessly caused serious bodily injury to a member of his family or household, and (2) used a deadly weapon during the commission of the assault. Tex. Penal Code Ann. §§ 22.01(a)(1) (West Supp. 2016), .02(a)(1), (b)(1); *see also* Tex. Fam. Code Ann. §§ 71.003, .005 (West 2014).

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *see also Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (applying the *Jackson* standard to review a deadly weapon finding); *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) (same).[6] This standard gives full play to the responsibility of the trier of

---

[6]Although appellant raises legal and factual sufficiency in the title of his first issue, he recognizes that the two standards are "indistinguishable." We review

5

fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App.), *cert. denied*, 136 S. Ct. 198 (2015).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not reevaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *See Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Murray*, 457 S.W.3d at 448. We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Id.* at 448–49. The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing guilt. *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

---

all elements that the State must prove beyond a reasonable doubt under the single *Jackson* standard. *See Morgan v. State*, 501 S.W.3d 84, 89 n.14 (Tex. Crim. App. 2016); *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013).

A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury."  Tex. Penal Code Ann. § 1.07(a)(17)(B) (West Supp. 2016); *Daniel v. State*, 478 S.W.3d 773, 780 (Tex. App.—Fort Worth 2015, no pet.); *see also* Tex. Penal Code Ann. § 1.07(a)(46) (defining "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ").  For evidence to be sufficient to sustain a deadly weapon finding, it must demonstrate that the object meets the statutory definition of a deadly weapon, that the deadly weapon was used or exhibited "during the transaction from which" the felony conviction was obtained, and that someone was put in actual danger.  *Drichas*, 175 S.W.3d at 798.

Hands and feet may qualify as deadly weapons by the way they are used. *Hopper v. State*, 483 S.W.3d 235, 239 (Tex. App.—Fort Worth 2016, pet. ref'd); *Orona v. State*, 341 S.W.3d 452, 460 (Tex. App.—Fort Worth 2011, pet. ref'd). Evidence that a fact-finder may consider in determining whether an object was used as a deadly weapon includes the physical proximity between the victim and the object, any threats or words used by the defendant, the manner in which the defendant used the object, testimony by the victim that she feared death or serious bodily injury, and testimony that the object had the potential to cause death or serious bodily injury.  *Hopper*, 483 S.W.3d at 239.

7

Kimberly testified that during appellant's assault of her, he kicked her stomach and side. She also explained that after the assault, her ribs hurt, she could not breathe, and she felt lightheaded. When Kimberly arrived at the police station the next day, it was evident that she had a hard time walking and breathing. Dr. Mahajan testified that Kimberly presented to the hospital that day with chest pain and shortness of breath and was diagnosed as having a pneumothorax—a collapsed lung—caused by forceful trauma. Dr. Mahajan described a pneumothorax as an "emergent condition," testified that Kimberly's pneumothorax required treatment through a chest tube, stated that her injury would not have improved on its own, explained that the pneumothorax impaired the function of Kimberly's lungs, and explained that she could have died without treatment.[7] Kimberly's medical records state that "[c]ritical care was necessary to treat or prevent imminent or life-threatening deterioration" of her conditions.

---

[7]In determining whether a bodily injury creates a substantial risk of death, we should consider the

> impairing quality of the bodily injury as it was inflicted on a complainant by an offender. Accordingly, when evaluating the sufficiency of the evidence to determine whether there was a serious bodily injury, an appellate court should not consider the amelioration . . . of an injury . . . [through] medical treatment.

*Blea v. State*, 483 S.W.3d 29, 31, 34–35 (Tex. Crim. App. 2016) (citation omitted) (holding that an injury qualified as "serious bodily injury" when the victim had a collapsed lung, she was taken to a hospital, the lung required a tube to permit breathing, and medical testimony described a risk of death).

Under the standards recited above, viewing this evidence and the remaining evidence in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that appellant used at least his feet as deadly weapons because they were not only capable of causing, but did cause, serious bodily injury to Kimberly. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B), (46); *Blea*, 483 S.W.3d at 34–35; *Patterson v. State*, No. 11-06-00209-CR, 2008 WL 564880, at *3 (Tex. App.—Eastland Feb. 28, 2008, pet. ref'd) (not designated for publication) (stating that a pneumothorax qualified as a serious bodily injury because it created a substantial risk of death); *see also Roberts v. State*, 766 S.W.2d 578, 579–80 (Tex. App.—Austin 1989, no pet.) (holding that a pickup truck was a deadly weapon when the evidence showed that reckless driving not only could have caused, but did cause, death or serious bodily injury to victims). We overrule appellant's first issue.

## Jury Charge Error

In his second issue, appellant argues that the trial court's unobjected-to jury charge in the guilt/innocence phase contained an erroneous instruction that caused him to suffer egregious harm. "[A]ll alleged jury-charge error must be considered on appellate review regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In our review of a jury charge, we first determine whether error occurred; if error did not occur, our analysis ends. *Id.* If error occurred, whether it was preserved determines the degree of harm required for reversal. *Id.* Unpreserved charge error warrants

9

reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19 (West 2006). The appropriate inquiry for egregious harm is fact specific and must be performed on a case-by-case basis. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011).

In making an egregious-harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

As explained above, to convict appellant of a first-degree felony for aggravated assault, the jury was required to find that he used a deadly weapon during the assault. Tex. Penal Code Ann. § 22.02(b)(1). Here, however, the charge erroneously instructed the jury that it could convict appellant of a first-

degree felony if it found that he used "or exhibit[ed]" a deadly weapon—his hand, foot, or a tree branch—during the assault. *See id.*

The State assumes that error occurred and argues that the error was not egregiously harmful. We agree. Here, there was no evidence that would have led any rational jury to conclude that during the assault, appellant only *exhibited* his hand, foot, or a tree branch. Rather, the State's evidence and arguments focused on his *use* of these items to seriously injure Kimberly. During the State's closing argument, the prosecutor said, "[Appellant] took [Kimberly] in that backyard. He kicked her repeatedly. He punched her and he hit her with that tree branch."

Also, under the language in the jury charge, the jury's finding that appellant caused serious bodily injury to Kimberly carries an implicit finding that he *used* those items to do so. The charge instructed the jury to find appellant guilty of the first-degree offense if it found

> from the evidence beyond a reasonable doubt that . . . [appellant] intentionally, knowingly, or recklessly cause[d] serious bodily injury to [Kimberly] *by striking [Kimberly] with a tree branch or by striking [Kimberly] with the defendant's hand or by striking [Kimberly] with the defendant's foot*, and the defendant did then and there, during the commission of said assault, use or exhibit a deadly weapon, to-wit: a tree branch or the defendant's hand or the defendant's foot, that in the manner of its use or intended use was capable of causing death or serious bodily injury . . . . [Emphasis added.]

Under this language and the evidence and arguments presented to the jury, there is no legitimate risk that the jury erroneously convicted appellant of the first-degree felony based on his exhibition of the tree branch or his hand or foot

11

rather than his use of those items. Thus, we conclude that the error in the jury charge did not egregiously harm appellant, and we overrule his second issue. *See Nava*, 415 S.W.3d at 298; *Almanza*, 686 S.W.2d at 171; *see also Hooker v. State*, No. 12-02-00173-CR, 2003 WL 22048243, at *2–4 (Tex. App.—Tyler Aug. 29, 2003, pet. ref'd) (mem. op., not designated for publication) (holding that a trial court's erroneous jury charge that allowed a jury to find use or exhibition of a deadly weapon was harmless when the evidence and arguments solely focused on the use of a car, rather than the exhibition of the car, as a deadly weapon).

## Closing Argument Objections

In appellant's third issue, he asserts that the trial court erred by failing to instruct the jury to disregard allegedly improper arguments made by the State. During the State's closing argument concerning appellant's guilt, the following exchange occurred:

> [THE STATE:] The evidence that you have before you is that on March 29th of 2014, [Kimberly] came home and [appellant] was mad. And we don't know why [appellant] was mad. . . . But he calls [Kimberly] into the backyard. And whether she came up to the fence and he drug her in there or whether he drug her to the backyard, folks, that doesn't matter. He took her in that backyard. He kicked her repeatedly. He punched her and he hit her with that tree branch.
>
> And I want y'all to remember something when you go back there. This is a traumatic experience. Our bodies, our minds work differently when we experience a traumatic experience.
>
> [DEFENSE COUNSEL]: Objection. Adding facts that are not in the record.
>
> THE COURT: I'll sustain.

12

[THE STATE]: It's a traumatic experience. And is [Kimberly] supposed to remember every single detail every single time?

Later during the same argument, the following colloquy occurred:

[THE STATE:] And something that the Defense brought up about [Kimberly's friend], you-all saw her. [She] could care less about being here. She did not want to be here. She told the cops as soon as they called her, I do not want to be involved in this.

[DEFENSE COUNSEL]: Objection. That's a misstatement of the evidence.

THE COURT: Sustained.

[THE STATE]: You heard from the witness stand what [a police officer] said and that's exactly what he said. She won't have anything to do with this.

Appellant contends that the trial court properly sustained his objections to these arguments "but never told the jury to disregard." The State contends that appellant forfeited his complaint about the lack of instructions to disregard because he did not request them and instead rested on the trial court's rulings that sustained his objections.

To preserve error in prosecutorial argument, a defendant must pursue his objection to an adverse ruling. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). Accordingly, because the trial court sustained appellant's objections and because he did not then pursue further rulings by requesting instructions to disregard, he forfeited any error arising from the arguments above. *See* Tex. R. App. P. 33.1(a); *Archie*, 221 S.W.3d at 699; *Mendoza v. State*, Nos. 02-10-00047-CR, 02-10-00048-CR, 02-10-00049-CR, 2010 WL 5621447, at *6 (Tex.

13

App.—Fort Worth Dec. 30, 2010, no pet.) (mem. op., not designated for publication).  We overrule appellant's third issue.

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; GABRIEL and SUDDERTH, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 30, 2017

14