

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-24-00457-CR
No. 02-24-00458-CR

---

JADE WALKER, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court Nos. F21-2455-462, F21-2456-462

---

Before Birdwell, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

Jade Walker appeals her convictions for two counts of manslaughter and one count of racing on a highway and raises a single complaint challenging (1) the sufficiency of the evidence to support the three convictions and (2) the accompanying deadly-weapon findings. We affirm.

## I. Background

In the early afternoon on March 27, 2021, Walker—driving an Infiniti—and her brother Jaden—driving a Dodge Charger—were traveling southbound on FM 423, a busy six-lane road. They had been at a Chase Bank with their mother and were traveling in three cars to another Chase Bank. According to several witnesses, they appeared to be racing or following each other in concert at a high rate of speed. Jacquelyn Buhler and her husband, Clarence Buhler, were in an SUV driving northbound on FM 423 on their way home from the grocery store. As the Buhlers turned left across FM 423 at an intersection, Jaden—who was traveling at around 114 miles per hour in a 45- or 50-mile-per-hour zone—entered the intersection where the Buhlers were turning. He clipped the front of the Buhlers' SUV, spinning it, and swerved off to the side of the road. Walker, approaching the intersection at around 87–91 miles per hour, braked the Infiniti but nevertheless "T-boned" the passenger side of the Buhlers' SUV at about 83 miles per hour. According to a witness, "they all

2

tumbled and rolled";[1] "the Charger shot forward and ended up maybe another quarter mile down the road" from the Infiniti and the SUV.

The Buhlers suffered blunt-force injuries and died at the scene from their injuries. Walker and her younger sister, who had been a passenger in the Infiniti, were transported to the hospital.

Walker was charged with two counts of manslaughter, either as a primary actor or a party, and one count of racing on a highway.[2] A jury found her guilty of all three counts, found that she had used or exhibited a deadly weapon (her vehicle) in committing all three offenses, and assessed her punishment at six years' confinement on both manslaughter counts and ten years' community supervision for the racing. The trial court sentenced Walker accordingly and ordered that the sentences be served concurrently.

In her sole point, Walker challenges the sufficiency of the evidence to sustain her convictions and the deadly-weapon findings.

---

[1]Witnesses saw smoke and debris "fly in the air." The impact can be heard—although not seen—on at least one of the videos admitted into evidence. Another dashcam video from a northbound vehicle captured the moment of impact.

[2]A second racing count was dismissed at the State's request. In a separate trial, Jaden was convicted of manslaughter and racing. *Walker v. State*, Nos. 02-23-00346-CR, 02-23-00347-CR, 2024 WL 3715011, at *1 (Tex. App.—Fort Worth Aug. 8, 2024, no pet.) (mem. op., not designated for publication).

3

## II. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014). Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment

4

for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct.at 2793; *Dobbs*, 434 S.W.3d at 170.

## III. Manslaughter Counts

### A. Applicable Law and Indictments

Under the Texas Penal Code, a person commits manslaughter "if he recklessly causes the death of an individual." Tex. Penal Code Ann. § 19.04(a). A person acts recklessly or is reckless "with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." *Id.* § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.* "Manslaughter is a result-oriented offense: the mental state must relate to the results of the defendant's actions." *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013).

For a result-oriented offense like manslaughter, variances between manner-and-means allegations are not material and do not inform the hypothetically correct jury

charge or implicate sufficiency. *See Hernandez v. State*, 556 S.W.3d 308, 314, 327 (Tex. Crim. App. 2017); *cf.* Tex. Code Crim. Proc. Ann. art. 21.15 (requiring indictment to allege the act or acts relied upon to constitute recklessness). Additionally, when the jury returns a general guilty verdict on an indictment charging alternate methods of committing the same offense, the verdict will stand if the evidence suffices to support that finding based on at least one of the valid theories, even if the trial court erred by submitting the other theories to the jury. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012) (op. on reh'g).

Regarding causation, the Penal Code states that "[a] person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." Tex. Penal Code Ann. § 6.04(a). The Penal Code further states that a person is criminally responsible for causing a result "if the only difference between what actually occurred and what he desired, contemplated, or risked is that: (1) a different offense was committed; or (2) a different person or property was injured, harmed, or otherwise affected." *Id.* § 6.04(b).

Under Section 6.04, a "but for" causal connection must exist between the defendant's conduct and the resulting harm to find the defendant criminally responsible. *Pena v. State*, 522 S.W.3d 617, 624 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). If a concurrent cause is clearly sufficient, by itself, to produce the

6

result and the defendant's conduct, by itself, is clearly insufficient, then the defendant cannot be convicted. *Id.* But the Penal Code's scope of causation is broad; "an actor need not be the sole cause of the harm." *Cyr v. State*, 665 S.W.3d 551, 557 (Tex. Crim. App. 2022). "Where two or more causes satisfy 'but for' causation, a criminal defendant remains liable if her conduct was either sufficient to have caused the result alone 'regardless of the existence of a concurrent cause,' or both causes '*together*' were sufficient to cause the result." *Id.* (quoting *Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986)).

In the indictments, the two manslaughter counts alleged that Walker recklessly caused the Buhlers' deaths "by driving a motor vehicle on a busy roadway at an excessive speed or weaving in and out of traffic or failing to keep a proper look out or disregarding a traffic control device or driving a motor vehicle in a manner to catch or pass another vehicle when it is unsafe to do so."

## B. Evidence Sufficient

Walker contends that the evidence is insufficient to prove that she was liable for manslaughter under any of the manner and means charged. Regarding speeding, although she admits that she was speeding and that her "line of sight and reaction time were limited," she argues that her speed "was not related to the collision itself or the Buhlers' deaths" because it was her brother's fault by cutting her off and obstructing her view of the intersection. She relies on this court's opinion affirming Jaden's conviction, in which we held that the evidence was sufficient to support his

7

conviction as a primary actor because "the evidence showed that [his] recklessly driving at an excessive rate of speed caused the Buhlers' deaths when he unsuccessfully swerved past their turning vehicle at 114 miles per hour, and the initial collision with his speeding vehicle positioned the Buhlers' SUV to be 'T-boned' by his sister's speeding Infiniti." *Walker*, 2024 WL 3715011, at \*5. Walker appears to be arguing that the evidence shows that, but for Jaden's obstructing her vision and clipping the SUV, she would have merely sped through the intersection. But the jury was entitled to believe otherwise based on the evidence.

Walker approached a controlled intersection with turn lanes—on a busy road with businesses and a pedestrian walking in the intersection[3]—at 87–91 miles per hour, braking only when a collision was imminent. Evidence shows that even if she did not immediately see the Buhlers' SUV in the intersection when the Charger was in front of her, she would have been able to see the traffic light.[4] An investigating officer agreed that the fact that the Infiniti was traveling so quickly and following so closely to the Charger would have "impact[ed] its [driver's] ability to react to something if the Charger had blocked its view." And an accident reconstructionist testified that Walker's car would not have struck the Buhlers' SUV if she had been driving the speed limit and that speed was "the most important factor" in the collision.

---

[3]The pedestrian was on the opposite side of the intersection from where the accident occurred, but he was walking across the cross-street with the flow of traffic.

[4]The evidence was disputed as to whether the light was green, yellow, or red when the Charger and Infiniti entered the intersection.

Although we concluded in our prior opinion that Jaden's speeding and then clipping the Buhlers' SUV "positioned" the vehicle so that Walker's car T-boned it, that conclusion does not preclude Walker's speeding as a concurrent cause of the Buhlers' deaths. One of the videos admitted into evidence shows the Infiniti almost immediately behind the Charger when approaching the intersection. The jury was entitled to reasonably infer that, but for both Walker's and Jaden's high-speed entries into the intersection, the Buhlers' deaths would not have occurred. *See Cyr*, 665 S.W.3d at 557.

Accordingly, we hold that the evidence was sufficient to support Walker's convictions for both counts of manslaughter, as a primary actor.

## IV. Racing Count

Walker also contends that the evidence is insufficient to prove that she was racing or that, if she was racing, it was the cause of a death.

### A. Applicable Law and Indictment

"A person may not participate in any manner in . . . a race," defined as "the use of one or more vehicles in an attempt to: (A) outgain or outdistance another vehicle or prevent another vehicle from passing; (B) arrive at a given destination ahead of another vehicle or vehicles; or (C) test the physical stamina or endurance of an operator over a long-distance driving route." Tex. Transp. Code Ann. § 545.420(a)(1), (b)(2). Prohibited racing is punished as a second-degree felony "if it is shown on the

9

trial of the offense that as a result of the offense, an individual suffered serious bodily injury or death." *Id.* § 545.420(h).

The racing count alleged that Walker had intentionally or knowingly used the Infiniti (1) "in an attempt to outgain or outdistance [the] Charger," (2) "in an attempt to prevent [the] Charger[] from passing," or (3) "in an attempt to arrive at a given destination, namely Chase Bank, ahead of [the] Charger" and that "as a result of the offense, Clarence Buhler suffered death."

## B. Evidence Sufficient

The evidence is sufficient to support the jury's finding that Walker was racing with Jaden and that their racing resulted in a death. Both Walker and Jaden were speeding excessively.

One witness testified that, from his experience with drag racing, Jaden was driving at least 100 miles per hour and was weaving in and out of traffic without signaling. He also testified that after stopping at the light in the intersection immediately preceding the one where the accident occurred, Jaden "rapidly accelerate[d]": "You could hear the engine roaring as fast as it could go, I would assume, all the way, you know, pedal to the floor. And it just continued to accelerate passing every car it encountered on the way." The witness initially saw the Infiniti ahead of the Charger. Both cars were "going fast at the time," and then the Charger accelerated and went around the Infiniti. He testified that "[i]t looked like they were racing"—by which he clarified that he meant they were "both attempting to go fast

10

together"—and that the Infiniti was "trying to do anything to catch up with the Charger." Both cars were going "substantially faster" than any of the other cars on the road at the time.

Another witness testified that after the light turned green at the preceding intersection, both cars took off at a high rate of speed and were following each other: According to that witness, "anytime [the Charger] made a lane change, the [Infiniti] was directly behind." The drivers were "pretty much acting in concert or mirroring each other."

Yet another witness testified that both cars were driving "[d]rastically higher" than the speed limit; "moving, cutting other vehicles off, [and] switching lanes"; and "speeding and chasing each other": "[I]f one would move, the other would try to catch up." They were "racing to the red light" and "trying to get there fast."

A fourth witness testified that it seemed like the two cars were racing because they were "flying" and it "seemed like they were chasing each other." They were "whipping around and seemed to be trying to keep up with each other."

A fifth witness testified that the Infiniti driver was trying "quickly to catch up to get closer to the [Charger] [and] close in the distance between the two." That witness said that she drove on FM 423 "every single day" and had "never seen anybody drive that fast on the road." When the cars "zoomed past" her car, they made it shake.

11

And, finally, a witness testified that "nobody would be going that fast on a road without the intent of racing[] and following that closely. The [Infiniti] was on the tail of the Charger, so it was very obvious." When asked if it had appeared that the Infiniti driver was trying to pass the Charger, the witness answered, "Yes, very much so," because the Infiniti was less than a car length behind the Charger. According to that witness, "Unless you're trying to get up so that you can get around, there wouldn't be any other reason."

To argue that the evidence is insufficient to prove that she was racing, Walker relies on the fact that much of the testimony was solely about Jaden's driving and that immediately before the accident, she had mostly followed him and changed lanes when he did.[5] But the jury was entitled to rely on the witnesses' descriptions of Walker's driving—particularly that Walker was speeding and that she appeared to be trying to keep up with Jaden—as sufficient to prove that she was at least attempting to outgain or outdistance him, regardless of whether she had managed to catch up to him before hitting the Buhlers' SUV. *See Lopez v. State*, No. 04-08-00896-CR, 2009 WL 4852197, at *2 (Tex. App.—San Antonio Dec. 16, 2009, pet. ref'd, untimely filed) (mem. op., not designated for publication); *Sony v. State*, 307 S.W.3d 348, 354 (Tex. App.—San Antonio 2009, no pet.).

---

[5]Walker testified on her own behalf and denied racing, weaving in and out of traffic, or even seeing her brother on the road until he passed her before the intersection where the accident occurred. Walker said she did not realize how fast she was driving, but she denied driving up to 90 miles per hour.

12

As this court did in *Daniel v. State*, we likewise conclude that from the evidence in this case, the jury could have reasonably inferred that if Walker had not been racing with Jaden, "the accident, and the resulting death and injury, would not have occurred." 478 S.W.3d 773, 778 (Tex. App.—Fort Worth 2015, no pet.). Viewing the evidence in the light most favorable to the verdict, including the video evidence which the jury viewed and from which it could have reasonably inferred that Walker was racing Jaden—even if she had not yet managed to pull ahead of him—we hold that the evidence was sufficient for the jury to find Walker guilty of racing on a highway and thus causing death.

## V. Deadly-Weapon Findings

In the final part of her sufficiency issue, Walker contends that the evidence is insufficient to support the jury's findings that she used or exhibited a deadly weapon in committing the offenses. Walker argues that "[t]he evidence here supports at a minimum that [she] was speeding, but that her speeding was not in relation to a race nor was she acting in concert with [Jaden's] reckless driving."

### A. Applicable Law

"[A] motor vehicle is not a deadly weapon *per se*, but [it] can be found to be a deadly weapon *if it is used in a manner* that is capable of causing death or serious bodily injury." *Couthren v. State*, 571 S.W.3d 786, 789 (Tex. Crim. App. 2019). Manner of use is determined by examining whether the driving was reckless or dangerous. *Id.* at 790. "Proof of reckless driving, particularly when it in fact resulted in death or serious

13

bodily injury, is sufficient to support a deadly-weapon finding." *Sanders v. State*, No. 02-18-00539-CR, 2020 WL 5242436, at *6 (Tex. App.—Fort Worth Sept. 3, 2020, pet. ref'd) (mem. op., not designated for publication) (citing *Sierra v. State*, 280 S.W.3d 250, 256 (Tex. Crim. App. 2009)). Among the factors we consider when determining whether driving was reckless are whether the driver was (1) speeding, (2) disregarding traffic signs and signals, and (3) driving erratically. *Gordon v. State*, No. 02-23-00101-CR, 2024 WL 2760913, at *4 (Tex. App.—Fort Worth May 30, 2024, pet. ref'd) (mem. op., not designated for publication).

## B. Evidence Sufficient

An officer who investigated the accident agreed that "the faster something is going when it hits something" the more dangerous it is and that an automobile can be a deadly weapon, depending on how it is used. He believed that the Infiniti was capable of, and did, cause serious bodily injury or death. It was one of the "more severe" accidents he had investigated. He also agreed that an ordinary person driving as fast as Walker was down a busy street, approaching an intersection where the light has been "green for a while," should appreciate the riskiness and carelessness of that behavior.

Walker had been driving 91 miles per hour in a 45- or 50-mile-per-hour zone. She had been keeping pace with or following Jaden and changing lanes when he did. She slowed down to only 87 miles per hour immediately before entering a controlled intersection with turn lanes where there was at least one business—a grocery store—

and a pedestrian nearby. And she hit the brakes only immediately before impact, slightly decelerating to 83 miles per hour at impact. Evidence showed that if she had been driving at the speed limit, she could have avoided the accident. Yet it was her vehicle's impacting the Buhlers' SUV at such a high speed that killed the Buhlers. Indeed, an officer testified that this type of collision is one likely to cause serious bodily injury or death.

We conclude that the evidence of Walker's reckless driving resulting in death was sufficient to prove that Walker used or exhibited a deadly weapon in committing the offenses. *See id.* at *4–5.

## VI. Conclusion

Because we hold that the evidence was sufficient to support Walker's convictions and accompanying deadly-weapon findings, we overrule her sole point and affirm the trial court's judgments.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 26, 2025

15