

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-18-00118-CR

---

ANTHONY DEWAYNE BUCK, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 69th District Court
Sherman County, Texas
Trial Court No. 1015, Honorable Ron Enns, Presiding

---

March 18, 2019

## MEMORANDUM OPINION

### Before QUINN, C.J., and CAMPBELL and PARKER, JJ.

Anthony Dewayne Buck (appellant) appeals from his conviction on two counts of criminally negligent homicide with a deadly weapon. The convictions arose from deaths caused as he drove his eighteen-wheeler tractor-trailer into a lane of oncoming traffic and into the path of Mr. and Mrs. Studesville. The latter were riding upon a motorcycle at the time. The collision occurred as appellant attempted to reach for a candy bar located on the floorboard of his truck. Mr. Studesville died instantly. Mrs. Studesville died approximately fifty minutes later after attempts to save her proved unsuccessful.

Four issues pend for our review. Two involve evidentiary matters. A third concerns whether it is appropriate to ask a jury to make a deadly weapon finding when the accused is charged with criminally negligent homicide. Via the fourth issue, appellant questions whether the trial court erred in denying his motion for new trial; he believes himself entitled to same because jurors saw him walking in a secured outdoor area after they retired to deliberate guilt/innocence. We affirm.

*Issue One – Evidence of Mrs. Studesville's Physical Condition at the Scene*

We initially address the contention that "[t]he Court erred in admitting highly prejudicial testimony of the first responders on the scene of the accident." The testimony came from several witnesses who were asked to describe aspects of Mrs. Studesville's physical condition at the scene of the accident and as medical personnel attended to her. It encompassed reference to her lucidity, severed and broken limbs, and pain. Appellant objected to the testimony of the first witness (Wisdom) who proffered such testimony. He urged that "[a]ll of this is post accident. The woman is deceased, that's going to come out, but this is just to bring sympathies from the jury. It has nothing to do whether [Appellant] was negligent or reckless or criminally negligent." This objection was overruled, and questioning continued, as did the witness's description of Mrs. Studesville's condition. A number of questions and answers later, appellant uttered the following: "Your Honor, I'm just going to reiterate my objection and ask for a running objection," which running objection the trial court allowed.

At least two other witnesses also testified to Mrs. Studesville's condition. They imparted like testimony to that of Wisdom, and after their having spoken to some extent, appellant would also object to their continuation for like reasons. That is, he believed the evidence was being solicited to appeal to the sympathies of the jurors and had no

2

relevance to his culpability. Omitted from these subsequent objections and their denial, though, was a request for a running or continuing objection.

To preserve error involving the admission of evidence, one must contemporaneously object each time the objectionable evidence is proffered. *See Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003); *Moore v. State*, No. 07-13-00270-CR, 2014 Tex. App. LEXIS 4517, at *3 (Tex. App.—Amarillo Apr. 24, 2014, no pet.) (per curiam) (mem. op., not designated for publication). To negate the need for continually objecting, though, one may solicit a running or continuing objection. *See Valle*, 109 S.W.3d at 509. Nevertheless, a running objection does not generally preserve objections to like evidence or testimony proffered by subsequent witnesses unless it explicitly references the testimony of other witnesses. *Sigalavillavicencio v. State*, No. 02-17-00244-CR, 2019 Tex. App. LEXIS 470, at *12 (Tex. App.—Fort Worth Jan. 24, 2019, no pet. h.) (mem. op., not designated for publication); *accord Stafford v. State*, 248 S.W.3d 400, 410 (Tex. App.—Beaumont 2008, pet. ref'd) (holding that the objection was not preserved because "[w]hile Stafford requested, and was granted, a running objection to Totino's testimony, the record does not indicate he requested that his running objection be applied to all witnesses testifying to 'prior relationship' matters"). Finally, should the same evidence be admitted without objection elsewhere in the trial, then any purported error in admitting it is cured. *Valle*, 109 S.W.3d at 509; *Moore*, 2014 Tex. App. LEXIS 4517, at *3. The issue before us falls prey to these rules for the following reasons.

First, when appellant first urged his objection to the testimony of Wisdom and the trial court overruled it, he did not then ask for a running or continuing objection. Instead, Wisdom continued to provide testimony falling within the realm of the evidence appellant deemed objectionable. Consequently, he did not abide by the rule obligating him to object

each time the questionable evidence was uttered or admitted. Thus, evidence similar to that he deemed objectionable was admitted without objection.

Second, his eventual request of a running objection said nothing about testimony from other witnesses broaching the same undesirable matter. Thus, it did not preserve his complaints about the later witnesses testifying to the same thing. Per *Sigalavillavicencio* and *Stafford*, appellant was required to object again.

And, while he eventually did object, his complaint occurred after the witnesses had been asked and had answered questions regarding Mrs. Studesville's physical condition and injuries. In other words, his objection was not contemporaneous or uttered when the grounds for the objection first became apparent. *See Johnson v. State*, 878 S.W.2d 164, 167 (Tex. Crim. App. 1994) (en banc) (stating that an objection is timely if it is raised as soon as the ground of objection becomes apparent); *Mumphrey v. State*, No. 12-14-00176-CR, 2016 Tex. App. LEXIS 5684, at *5 (Tex. App.—Tyler May 27, 2016, pet. ref'd) (mem. op., not designated for publication). So, again, evidence about which he now complains, for all practical purposes, was admitted without objection. And because it was, any alleged error in admitting the evidence was cured. This obligates us to overrule the issue.

*Issue Two – Testimony of Victims' Son*

By his second issue, appellant asserts that the trial court erred by "admitting the highly prejudicial testimony of the deceased's celebrity son in the guilt/innocence phase of the trial." That is, it erred in allowing the victims' son to testify due to his supposed celebrity status. Furthermore, he purportedly had celebrity status due to his having coached in the National Football League. We overrule the issue.

4

The objection uttered by appellant at trial consisted of the following statement: "I'm going to object to this witness. He has no personal knowledge of this accident. He was not at the scene. He was never at the scene. I have no discovery showing that he had anything to do with it, with the investigation of it or has any personal knowledge of it." As can be seen, nothing was said about the witness' celebrity status and the prejudicial effect, if any, it may have upon the jury. Thus, it appears that the grounds underlying the objection at trial fail to comport with those urged on appeal. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) (stating that the point of error on appeal must comport with the objection made at trial). Yet, assuming *arguendo* that the two complaints can be read to encompass the same grounds for objection and the testimony was inadmissible, we find no harm. *See id.* (stating that "[i]n determining whether a complaint on appeal comports with a complaint made at trial, we look to the context of the objection and the shared understanding of the parties at the time").

To secure a conviction for criminally negligent homicide, the state must prove that 1) the accused's conduct caused the death of an individual; 2) the accused should have been aware that there was a substantial and unjustifiable risk of death from his conduct; and 3) accused's failure to perceive the risk constituted a gross deviation from the standard of care an ordinary person would have exercised under like circumstances. *Montgomery v.* State, 369 S.W.3d 188, 192–93 (Tex. Crim. App. 2012). Here, the evidence of appellant's guilt was overwhelming. The record showed that several months earlier, a DPS trooper had stopped appellant for speeding, determined that his medical card and vision waiver had expired, designated him "out of service," and directed him to forgo driving until a current medical card and vision waiver were obtained. Apparently, appellant was blind in one eye. Needless to say, the trooper's directives went unheeded.

5

Instead, appellant resumed operating the truck despite same being "out of service" and him prohibited from driving. And, such was his status on the day of the accident.

On that day, appellant, a commercial truck driver, was operating his eighteen-wheeler at sixty mph on a stretch of road containing three lanes. One of the three was not only to appellant's right but also blocked off by barriers. This meant that the eighteen-wheeler was being operated in the lane adjacent to that in which the Studesvilles rode their motorcycle. These circumstances, according to a testifying expert, obligated a truck driver "to pay more attention" because "[y]ou can't be looking around. You can't be inattentive."

Yet, appellant was inattentive for about three seconds as he reached for the candy bar. As he did so, he drifted to the left for approximately 250 feet, ultimately usurped nearly all of the lane carrying oncoming traffic, and then heard the sound of his eighteen-wheeler strike the oncoming motorcycle of the Studesvilles. And though Mrs. Studesville was alive for a brief period after the impact, appellant opted not to approach or render her assistance. Finally, the impact resulting from appellant's straying into the Studesvilles' lane of traffic caused their deaths. The foregoing is ample evidence establishing the elements of criminally negligent homicide.

We also note that little time was spent on soliciting information from the victims' son. The questions posed and his answers thereto consumed about five and a half pages of the multi-volume reporter's record. Mention of his status as an NFL coach consumed even less space. Nor was reference made to his status as an NFL coach by the prosecutor in closing arguments.

In conducting a harm analysis encompassing the alleged improper admission of evidence, we assess whether the error affected appellant's substantial rights. *Coble v.*

6

*State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). If improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such non-constitutional error is harmless. *Id.* Making that determination requires us to examine the entire trial record and calculate, as best as possible, the probable impact of the error upon the rest of the evidence. *Id.* (noting the overwhelming weight of the evidence illustrating guilt as an aspect of the entire trial record warranting consideration). We have done that here. Eric Studesville's status as an NFL coach garnered little attention. Furthermore, the evidence of appellant's guilt was overwhelming. Under these circumstances, we cannot say that appellant's substantial rights were affected by the evidence under attack, even if its admission were improper.

*Issue Three – Deadly Weapon Finding*

Appellant next contends that the trial court erred in asking the jury to determine whether appellant used or exhibited a deadly weapon when committing the offense of criminally negligent homicide. This purportedly is so because a deadly-weapon finding runs contrary to the legislative intent underlying the provision characterizing criminally negligent homicide as a state-jail felony. *See* TEX. PENAL CODE ANN. § 19.05(b) (West 2011) (stating that criminally negligent homicide is a state-jail felony). In other words, because criminally negligent homicide will always involve a death, a fact-finder will always be able to make an affirmative deadly-weapon finding. And, by always making that finding, punishment for the crime will always be enhanced to a range outside that applicable to a state-jail felony. That, according to appellant, contradicts legislative intent implicit in designating criminally negligent homicide as a state-jail felony. This very argument was made and rejected in *Chambless v. State*, 411 S.W.3d 498 (Tex. Crim. App. 2013). Being bound to follow the precedent of our Court of Criminal Appeals, we

7

have no choice but to overrule appellant's complaint. *See Sierra v. State*, 157 S.W.3d 52, 60 (Tex. App.—Fort Worth 2004), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007) (noting that an intermediate appellate court "is bound by the precedent of the Texas Court of Criminal Appeals and has no authority to disregard or overrule" it).

*Issue Four – Motion for New Trial*

Finally, appellant contends that the trial court erred when it overruled his motion for new trial. He moved for new trial because some of the jurors saw him in a secured recreational area of the attached county jail after they retired to deliberate guilt/innocence. This occurrence allegedly violated his constitutional right to the presumption of innocence. While it may be an infringement upon the presumption of innocence to have an accused appear before the jury in certain prison garb or in handcuffs, *see Pope v. State*, No. 07-16-00369-CR, 2017 Tex. App. LEXIS 10641, at *14–15 (Tex. App.—Amarillo Nov. 13, 2017, pet. ref'd) (mem. op., not designated for publication) (prison garb); *Coleman v. State*, 642 S.W.2d 205, 207 (Tex. App.—Houston [14th Dist.] 1982, pet. ref'd) (handcuffs), no such infringement occurred here. We overrule the issue.

According to the record, one of the jurors who saw appellant testified that she and two other jurors saw appellant in street clothes in the enclosed outdoor recreational area of the county jail. They did so via a window while deliberating his guilt or innocence. The other two jurors asked the testifying juror whether appellant was in jail; she responded that she had no idea. Nothing more was mentioned of appellant's presence. The testifying juror also said that 1) seeing appellant in the enclosed area did not affect her verdict, 2) the jury had already voted on the issue of guilt when appellant was spied, and 3) she and the other two jurors had already voted appellant guilty.

8

Other evidence indicates that appellant was taken to the recreational area because he had begun to sweat and show signs of a panic or anxiety attack. When asked by a jail administrator if he needed to step outside, appellant answered in the affirmative. A video introduced at the hearing also showed him pacing within the recreational area in street garb for approximately twenty minutes. He wore no personal restraints.

Appellant being seen within the recreational area was an inadvertent, innocent, fortuitous, and brief event. Under those circumstances, the encounter did not violate the presumption of innocence, and the trial court did not abuse its discretion in denying appellant a new trial. *See Clark v. State,* 717 S.W.2d 910, 919 (Tex. Crim. App. 1986) (en banc) (holding that while requiring an accused person to wear handcuffs before the jury infringes upon his constitutional presumption of innocence, it is also true that a momentary, inadvertent, and fortuitous encounter outside the courtroom between a handcuffed accused and one or more of the jurors does not necessarily call for a mistrial or reversal); *Gonzalez v. State*, 966 S.W.2d 804, 807 (Tex. App.—Amarillo 1998) *aff'd*, 3 S.W.3d 915 (Tex. Crim. App. 1999) (stating the same and holding that briefly seeing the accused in handcuffs was a fortuitous event which did not entitle him to reversal).

Having overruled appellant's issues on appeal, we affirm the trial court's judgment of conviction.


Brian Quinn
Chief Justice

Do not publish.

9